JULIA OSTERWEIL, ALICE HANAUER AND J. & R. COR-
PORATION, A CORPORATION OF NEW JERSEY, PLAIN-
TIFFS-APPELLANTS, v. THE CITY OF NEWARK, A
MUNICIPAL CORPORATION, DEFENDANT-RESPOND-
ENT.

Submitted October 25, 1935—Decided January 31, 1936.

For the appellants, *Stein & Stern* (*S. Arthur Stern* and *Milton B. Conford,* of counsel).

For the respondent, *Frank A. Boettner,* corporation counsel (*Raymond Schroeder,* assistant corporation counsel, of counsel).

The opinion of the court was delivered by

RAFFERTY, J. This is an appeal from a judgment for the defendant-respondent in an action of ejectment rendered in the Essex County Circuit Court. The cause was tried by the Circuit Court judge, sitting, by stipulation of the parties, without a jury.

The question involved is as to the right of possession of a strip of land eight feet in width by approximately two hundred and fifty-eight feet in length, lying northerly of and contiguous to the northerly line of the old Morris canal and easterly of Cherry street in the city of Newark.

The claim of appellant is based upon an alleged record title of seventy-one years. The defense of the respondent city rests upon a dedication in 1830, a rededication in 1836, used by the public for a long period of years, and acceptance of the dedication and the rededication by ordinance of the city of Newark in 1928.

The common source of the claimed title of each of the parties is found in George Holden and Henry Holden by virtue of a deed dated and recorded in the clerk's office of the county of Essex on November 30th, 1824. There was introduced into evidence a map referred to as the "Holden map" in which the premises conveyed to Holden is mapped out into eighty-eight lots expressly bounded and containing express measurements. This map contains also references to the Morris canal and to certain streets, more particularly Canal street. Morris canal is indicated as running through Canal street. Northerly of Morris canal this street is indicated to be of the width of twenty-five feet. For some distance lengthwise of Canal street and northerly of the canal a line parallel to the northerly line of the canal is drawn, which line at a distance of approximately three hundred and ninety feet easterly of Mulberry street appears to fade out rather than discontinue and again seems to reappear farther easterly on the map. It is contended for appellant that assuming dedication by the map, the strip of land between the parallel lines, claimed to be eight feet, was reserved from the dedication and it is with respect to this strip of land, dominion over which has been asserted by the city, that appellant seeks a judgment in ejectment against the city. Holden sold certain of the lots so mapped with reference to the map. Thereafter Holden sold a portion of the premises to one Beach who mapped his holdings, setting out the same by lots and blocks and showing the disputed premises as Canal street but without reference to the parallel line indicated on the Holden map.

The Beach map was filed in the office of the clerk of Essex county of March 23d, 1836. Lots were sold by Beach with reference to his map. The Holden map does not appear to have been filed.

In the bill of particulars furnished to respondent by appellants and placed in evidence in the court below, appellants, in making out their claim of title to the premises, recite in the second item thereof the Holden map. Appellants recite also a bargain and sale deed from Beach to Bolles, dated November 14th, 1835, which purports to convey part of the eight-foot strip in question, in which deed it is recited that the grantee, his heirs, &c., are "to have the exclusive privileges of occupying the said strip in such manner as shall be permitted to others owning lots fronting on Canal street [referring to lots shown on Beach map] for the purpose of storing wood, coal and other articles thereon in such way as shall be permitted by the street commissioners." Appellants recite also in their chain of title another deed given by Beach to Aaron Gardner, dated November 14th, 1835, conveying another portion of the eight-foot strip with an identical limitation. It is worthy of note that as late as 1853 deeds in appellant's chain of title carry the limitation recited in the Bolles deed and that in 1860, 1863, 1887 and 1900, deeds of conveyance of the property were bargain and sale deeds and quit-claim deeds.

At the trial of the cause below appellants objected to the admission in evidence of the Beach map. Appellants make no reference as to where this objection may be found in the state of case, nor do they set out the objection in precise language. We need not, therefore, consider the same. However, it may be said that the Beach map was properly admitted into evidence.

Appellants contend that the trial court should have directed a verdict for plaintiffs on the issue of dedication, for the reasons that there was lacking on behalf of the defendants the requisite strict, cogent and convincing evidence of dedication and that plaintiff's proof of the practical construction of the status of the *locus in quo* by the respondent city, and by the alleged dedicators, was so conclusive of lack of intention to dedicate that a verdict for defendant would have warranted

being set aside. Appellants rely upon a statement in *Soper* v. *Conly*, 108 *N. J. Eq.* 370, taken from 18 *C. J.* 96. Upon appeal to this court reported in 107 *N. J. Eq.* 537, this language was not given express approval. The maps relied upon by respondent were proved to have platted the tracts of land of which the *locus in quo* was a part. Deeds of conveyance were made with reference to these maps. It was not necessary that the Holden map should have been filed in any public office of record to be admissible as evidence, the real question before the court below for decision was, what was the purpose of the owners of the land at the time the maps were made and the deeds executed and delivered? Was there the *animus dedicandi? Keyport* v. *Freehold, &c., Railroad Co.,* 74 *N. J. L.* 480. The proofs below were sufficient to justify the trial court in its conclusion as to the intent to dedicate. The proof of the practical construction of the status of the *locus in quo* by the respondent city and by the alleged dedicators was in nowise inconsistent with a finding of dedication. Such user of the premises by appellants and their predecessors in title as was had was not hostile to the claim of dedication. Repeatedly throughout the chain of title of appellants the several grantors of the premises either explicitly or by the character of deed of conveyance disavowed absolute ownership of the premises in question. The deeds of Bolles and Gardner were limited expressly to such use "as shall be permitted by the street commissioners." The series of bargain and sale deeds before adverted to, together with the public user, however limited, as may have been proved in the case was sufficient to put appellant on notice as to the dedication, if such notice were necessary. It was not necessary nor was it the duty of the city to indicate acceptance of the dedication by formal resolution or by overt acts within any given time. The exercise of the public right of actual possession and dominion over properties dedicated as we decide this property was dedicated, may be suspended and lie dormant, until such time as in the judgment of the proper legal authorities the public exigencies require their possession and use. *Long Branch* v. *Toovey,* 104 *N. J. L.* 335.

The dedication of the *locus in quo* having been effected, it

is of no importance that the opening of North Canal street in 1835 did not include the eight-feet in question. The dedication was irrevocable and continued until expressly rejected. *Long Branch* v. *Toovey, supra.*

The contemporary conveyance of parts of the eight-foot strip to private owners by Beach has been before referred to. Even though the express limitations as is indicated in the deeds to Bolles and Gardner were lacking, nevertheless such conveyance did not militate against the fact of dedication as the titleholder at all times had the right to use the property lawfully, subject, however, to the dedication. *Darling* v. *Jersey City, 73 N. J. Eq.* 318, and cases there cited.

Acquiescence by respondent in user by predecessors in title of appellants, even if proved, is immaterial for the reason before stated. It is immaterial also that the formal acceptance by the city was approximately one hundred years after the dedication. *Long Branch* v. *Toovey, supra.* Appellant urges that the purchase by the city of Newark from Beach in 1852 of an eight-foot strip west of Mulberry street is an indication that the city did not then conceive that it had a right to accept the dedication of Holden and Beach to the eight-foot strip of Mulberry street. This does not follow. There is nothing in the evidence which indicates that there ever was any dedication of any property west of Mulberry street, while it is determined that there was dedication, *ab initio,* of the premises east of Mulberry street. Nor is there any merit to the contention that the city admitted private ownership of the *locus in quo* by the survey made for the city in 1914, wherein the eight-foot strip bears the legend "Osterweil, Goldsmith et al.," or the fact that a survey of 1928 indicates that the city recognized the eight-foot strip as a separate integral tract of land. The right of the city to accept dedication is not prejudiced by the informal acts of its agents and can only be surrendered by express and formal acts of the authoritative body. *Long Branch* v. *Toovey, supra.*

It is further contended that the determination of the issue of dedication was a question of law, that facts in evidence not having been disputed. This contention is not borne out by the testimony. There was sharp dispute on many of the

points of evidence, particularly as to the meaning of the parallel line northerly of the canal as well as in other instances. The determination of the issue was therefore a mixed question of law and fact.

Appellant urges that the acts of the commissioners appointed pursuant to chapter 195, *Pamph. L.* 1857, constituted a "formal vacation" of the *locus in quo.* The statute referred to, amongst other things, empowers the commissioners "to close, or direct to be closed, any streets, &c., or any parts thereof, which have heretofore been laid out, &c." This eight-foot strip cannot be said to have been "laid out" and the language of the statute is applicable only to such a street or road or any part thereof as has then been laid out.

Here we have a dedication merely with the only possibility of reverter dependent upon a formal vaction or abandonment, by a duly constituted authority, of the public right thus created. *Long Branch* v. *Toovey, supra.* The right in the municipal body to accept the dedication and thereafter "lay out" the premises as and for a public street or road remained in the absence of affirmative action to the contrary.

Such formal vacation or abandonment is not found in the act of the street commissioners of the township of Newark in opening North Canal street in 1835, nor in any proper act done by the commissioners appointed under the authority of the act of 1857, *supra.* In the first instance the possession of the eight-foot strip unused in the "laying out" of North Canal street remained in the owner of the fee, subject to the dedication therefore made and the right to accept the offer of dedication of the eight-foot strip was not thereby yielded up by the municipal body. In the latter instance the commissioners were without authority to vacate this strip. An authority to close a street, &c., is not an authority to vacate or abandon the public right in a parcel of land theretofore dedicated but not yet accepted as a public street. Nor is this power to "close, &c.," comprehended within the title of the act which exclusively refers to the power "to lay out streets, &c."

Appellant urges that by virtue of 1 *C. S. S.* 1816, which is section 28 of our statute concerning limitation of actions that a sixty-year title in lands is unimpeachable under the

statute by any factor in existence prior to the inception of said title. This contention implies that appellant's title as against the dedication has been secured by possession adverse and hostile to the public right to accept the dedication. This cannot be so for the reason that such possession or title of appellants or their predecessors in title was always subject to the right of the city to accept the dedication and was therefore at the sufferance or permission of the city. It is so firmly imbedded in our law that the doctrine of adverse possession does not run against the state or its subdivisions and that the exercise of the public right of actual possession and dominion over such properties, of which the instant case is an example, may be suspended and lie dormant until such time as in the judgment of the proper legal authority the public exigencies require their possession and use (*Long Branch* v. *Toovey, supra*) that an act of the legislature, general in its terms, will not be deemed to apply against the sovereign power unless it is therein expressly provided.

We, therefore, conclude that the dedication of the *locus in quo* occurred upon the making of the Holden map and sale of lots by reference thereto, that the trial judge properly admitted the Beach map as confirmation of this fact and that the title of the city of the *locus in quo* is paramount to that of appellants.

The judgment below is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, LLOYD, CASE, BODINE, DONGES, HEHER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, JJ. 12.

*For reversal*—PERSKIE, J. 1.