79 N.J. Super. 525 (1963)
192 A.2d 186
ANTHONY O. RULLIS, PLAINTIFF,
v.
HERBERT F. JACOBI AND L. STELLA JACOBI, HIS WIFE, AND EVELYN JACOBI, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided May 17, 1963.
*526 Messrs. Hofstra & Hofstra (Mr. Howard Stern, appearing), attorneys for plaintiff.
Messrs. Goldhor & Meskin (Mr. Sanford A. Meskin, appearing), attorneys for defendants.
HERBERT, J.S.C.
This case involves a dispute over a strip of land in Hillside. Triangular in shape, the strip measures a little over three feet along the westerly side of North Broad Street and from that base tapers off to a point, or near point, approximately 55 feet to the west. The plaintiff holds an unchallenged record title to a lot which lies immediately to the south of the strip in question. That lot has a frontage of 25 feet on North Broad Street and a depth of about 175 feet. The defendants are owners of record of the land immediately north of the plaintiff's. They contend that their record ownership of the triangular piece has not been affected, either in fact or in law, by conduct of the plaintiff and his predecessors.
For some time before May 31, 1923 Mr. and Mrs. Stead owned the 25-foot lot which has subsequently passed into the ownership of the plaintiff. It was the site of Mr. Stead's monument and gravemarker business. At a date which the proofs did not accurately establish, but which was before 1923, he erected a fence along most of the northerly side of the triangular strip which is now in dispute. It was described as a typical cemetery fence of the period, and consisted of heavy granite posts set deeply into the ground and connected by metal pipes or tubes as fence rails. One may surmise that Mr. Stead intended to place the fence along his northerly boundary line as defined in his deed, but made the mistake of putting it upon property owned by a predecessor of the defendants. It may be noted, too, that the side lines of the Stead lot (now the plaintiff's), as defined by deed, are *527 not at right angles to the North Broad Street frontage, and this could have contributed to a mistaken notion about the location of the correct boundary line. There are, however, no proofs as to why Mr. Stead placed the fence in the location where it remained until 1961.
On May 31, 1923 Mr. and Mrs. Stead conveyed to Mr. and Mrs. Gehrie, with a recital in the deed that title had been acquired by the grantors from a Mrs. Hutchinson on July 31, 1915. The Gehries in turn conveyed to Mr. and Mrs. George on December 7, 1951, and on August 11, 1958 the Georges transferred title to the plaintiff and his wife. In this series of transfers none of the deeds describes the line along which the fence stood. That line was, of course, the northerly side of the triangular plot now in dispute. Instead, the deeds all describe a lot having a 25-foot frontage on North Broad Street and a northerly boundary line which, for part of its length, is the southerly side of the triangle in dispute.
Each of Mr. Stead's successors in title operated a monument and gravemarker business, and the plaintiff is still doing so. The defendants made an attempt to prove that the property in dispute was not occupied by the plaintiff and his predecessors. They also tried to show that permission had been granted for such usage as took place. Both of these attempts failed. I am satisfied from the evidence, and find, that the space on the plaintiff's side of the fence was used by, and held in the possession of, him and his predecessors continuously for a total of more than 30 years. A number of photographs taken at various times were placed in evidence showing markers and monuments placed near the fence for display purposes. In addition, the plaintiff was able to produce Mrs. Gehrie as a witness. Though infirmities of age made it necessary for her to give her testimony by deposition, she was clear in mind and memory. She told how she had been active in the business with her husband during the Gehrie ownership, which extended from 1923 until 1951. She made it clear that they had used the disputed triangle as part of their display yard. The plaintiff himself testified that his use of the disputed area, and the *528 use made of it by his immediate predecessor George, was essentially the same as that of the Gehries.
On October 30 and November 1, 1961 the defendant Herbert Jacobi destroyed the fence. A few days later this suit was started in an effort to establish the plaintiff's claim of title and obtain damages for the destruction of the fence.
Although I am satisfied that the plaintiff and his predecessors held undisturbed possession of the parcel in question for more than 30 years prior to October 31, 1961, the testimony raises a question as to the character of the possession. Mrs. Gehrie testified that she and her husband used the land up to the fence with the thought that the fence line was the boundary line. Plaintiff testified that he was unaware his deed description did not include the disputed triangle, and on cross-examination conceded it was never his intention to use a fence outside of his boundary line. If the present case presented a truly original problem, I think much could be said for the proposition that one who makes a mistake about the location of his boundary line and occupies as owner land which he does not own is by the very fact of exercising the prerogatives of ownership assuming an adverse and even hostile attitude toward his neighbor's record title. It appears, however, that the problem has already been given a different answer in New Jersey: occupancy under a mistaken impression about the true location of a boundary line is not "hostile."
In Predham v. Holfester, 32 N.J. Super. 419 (App. Div. 1954), Judge Jayne pointed out that New Jersey follows the minority rule  and one strongly criticized  by holding that a person who by mistake takes possession beyond his true line with no intention of claiming farther than his actual boundary does not have the hostile intent essential to adverse possession.
Counsel for the plaintiff has argued, however, that the period involved in Predham was between 20 and 30 years, thus making N.J.S. 2A:14-6 the statute which the court had to consider there. In the present case the period of possession continued for more than 30 years prior to the time when the *529 fence was torn down by Mr. Jacobi, and the statute relied on by the plaintiff is N.J.S. 2A:14-30, which fixes a period of 30 years and otherwise is worded quite differently from section 6. I can find no sound basis for holding that a possession which by our precedents would not be hostile under the 20-year statute will nevertheless satisfy the requirements of the 30-year statute. Mulford v. Abott, 42 N.J. Super. 509 (App. Div. 1956), though not a case of mistake about a boundary line, did involve a period of more than 30 years. The initial taking of possession was without the consent of the owner encroached upon, yet there was no affirmative claim of title until seven or eight years before the end of the period. On those facts it was held that the indispensable element of hostility was missing and Mulford's claim of title by adverse possession was rejected. There is also a statement in Content v. Dalton, 121 N.J. Eq. 391, 404 (Ch. 1937), that the 30-year statute is inoperative if the element of hostility is lacking. The affirming opinion on appeal, after pointing out that the 30-year statute was involved, went on to hold that the possession relied on was not "adverse" and the statute was therefore inapplicable. Content v. Dalton, 122 N.J. Eq. 425 (E. & A. 1937). A strong dictum in Smith v. Kane, 49 N.J.L.J. 304 (Cir. Ct. 1926), also supports the requirement of hostility under the 30-year statute.
Though it may be interesting to speculate what result would follow under the principles stated in Predham if the wall of a ten-story building were placed on the land of another because of a boundary line mistake, this case presents no such problem. The fence destroyed by Mr. Jacobi, though composed of granite posts and metal rails, was only slightly more substantial, if at all, than the concrete driveway which was held in Predham not to represent hostile possession.
Counsel for the plaintiff cite and rely upon Gordon v. Lumberville Delaware Bridge Co., 108 N.J.L. 261 (E. & A. 1932). That was an action of ejectment. The 30-year statute was involved (then L. 1922, c. 188) and the defendant had judgment after merely proving actual possession for the statutory *530 period. For all that appears from the opinion there was nothing in the case to show that the possession was not the result of a boundary line mistake. At least where the possessor is the defendant, Gordon v. Lumberville is authority for the proposition that he can succeed by showing nothing more than 30 years of actual possession of improved lands. The court recognized, however, that in some cases facts may exist which "affect the running of the statute or which take the case outside of the scope of the statutory rule." (at p. 264) In the light of Predham v. Holfester, supra, and the cases there cited, the facts before me seem to present an exception to the statutory rule, an exception which as a trial judge I must recognize, though with considerable reluctance. Meyers v. Pavalkis, 73 N.J. Super. 208, 215 (App. Div. 1962).
The defendant Herbert F. Jacobi has counterclaimed for an alleged assault upon him while he and his helpers were destroying the fence. Having discovered that the work of destruction was being continued on November 1 after a protest about it had been made on the preceding day, the plaintiff saw a police car passing by and summoned the officer. Then he went over to where Jacobi was working and again objected. The objection included acts as well as strong words: the plaintiff grasped Jacobi's arm. Though Jacobi suffered no bodily harm, it must be concluded that the plaintiff touched him in an offensive way, thus committing a technical assault. Clayton v. New Dreamland Roller Skating Rink, Inc., 14 N.J. Super. 390, 398 (App. Div. 1951); Restatement, Torts, § 18.
On the main case there will be judgment without costs in favor of the defendants and against the plaintiff. This result, of course, makes it unnecessary to consider the plaintiff's proofs on damages resulting from the destruction of the fence.
On the counterclaim there will be judgment in favor of the defendant Herbert F. Jacobi and against the plaintiff for nominal damages in the amount of six cents, but without costs.