THOMAS F. PATTON AND RALPH S. TYLER, JR., TRUSTEES FOR ERIE LACKAWANNA RAILWAY COMPANY, PLAINTIFFS-APPELLANTS, v. NORTH JERSEY DISTRICT WATER SUPPLY COMMISSION, A BODY POLITIC OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT, AND TOWNSHIP OF WAYNE, A MUNICIPAL CORPORATION, DEFENDANT.

Argued January 25, 1983—Decided May 19, 1983.

182

*Raymond J. Lamb* argued the cause for appellants (*Lamb, Chappell, Hartung, Gallipoli & Coughlin,* attorneys).

*George J. Minish* argued the cause for respondent (*Minish & Williams,* attorneys; *George J. Minish* and *Mary M. Theroux,* on the brief).

The opinion of the Court was delivered by

SCHREIBER, J.

Plaintiffs, as Trustees of the property of the Erie Lackawanna Railroad Company, a debtor in reorganization under the federal bankruptcy act, contracted to sell a tract of unimproved vacant land in Wayne Township to Trip Distributors, Inc. *See* Law of July 1, 1898 ch. 541 § 77 as amended, codified at 11 *U.S.C.A.* § 205 (West 1946), repealed by Pub.L. 95–598, Title I, § 401(a), Nov. 6, 1978, 92 Stat. 2549. A survey and title search of the property made in connection with the proposed purchase disclosed that title to 6.89 acres of the land to be sold was questionable. Plaintiffs thereupon instituted this action against the defendant, North Jersey District Water Supply Commission, to quiet title.

Upon conclusion of the trial, the court entered judgment in favor of the plaintiffs. It found that fee simple title had vested by adverse possession under "all applicable Statutes of Limitations pertaining to real estate, *i.e., N.J.S.* 2A:14–6—20 year statute;

*N.J.S.* 2A:14–31—30 year statute and *N.J.S.* 2A:14–30—30 and 60 year statute . . . ." In particular the court found that title was obtained by adverse possession at the end of the 20-year period between 1847 and 1869 when the plaintiffs' predecessor in title had open, notorious and adverse possession. Upon the defendant's appeal, the Appellate Division reversed. It reasoned that there could be no adverse possession against the defendant or its predecessor in title because both were governmental agencies. It also reasoned that adverse possession could not lie because until 1927, when the defendant acquired title, the State had a remainder interest in the property in question and the State's interest in realty could not be subject to adverse possession. We granted plaintiffs' petition for certification. 91 *N.J.* 211 (1982). We affirm.

Substantially all the facts are undisputed. Most were stipulated by the parties. Our journey into the title record of the 6.89 acres begins on August 4, 1838. On that date James Van Duyne and his wife conveyed to the Morris Canal & Banking Company (Canal Company) a tract of land consisting of approximately 6.89 acres. An adjoining piece of land was also conveyed to the Canal Company on the same date by Peter Courter and his wife. The Canal Company remained the record owner of the property in question until it transferred the land to the defendant, North Jersey Water Supply Commission, on July 28, 1927.

The roots of the plaintiffs' claim to title begin on April 17, 1847. On that date the executors of the estate of James Van Duyne conveyed to Samuel Daniels and his wife by warranty deed a tract of land described as consisting of 13.13 acres, except for that portion of the land previously transferred to the Canal Company. Moses Taylor, as agent for the Morris and Essex Railroad Company, acquired from Samuel Daniels and his wife by warranty deed dated September 10, 1869, the entire 13.13 acreage. The description in the deed to the Morris and Essex Railroad Company did not exclude the acreage that James Van Duyne had sold to the Canal Company on August 4, 1838. The Morris and Essex Railroad Company was succeeded by various

railroad entities, the last being the Erie Lackawanna Railway Company whose trustees in bankruptcy are the plaintiffs in this suit.

Plaintiffs and defendant acknowledge that on the basis of the record title, the defendant is the owner of the disputed land. They also agree that, if plaintiffs have a superior right to the land, it must rest on adverse possession. The Appellate Division never reached the question whether adverse possession had been proven, the ground on which the trial court relied. Rather, the Appellate Division concluded that adverse possession could not run because of the Canal Company's status as a governmental entity and because of the State's remainder interest in the land created by the legislative act that incorporated the Canal Company.

Title by adverse possession may be acquired under (1) *N.J.S.A.* 2A:14–6 and 2A:14–7,[1] (2) *N.J.S.A.* 2A:14–30,[2] or (3) *N.J.S.A.* 2A:14–31.[3] These three statutes "differ slightly in

---

[1]*N.J.S.A.* 2A:14–6 and –7 read as follows:

Every person having any right or title of entry into real estate shall make such entry within 20 years next after the accrual of such right or title of entry, or be barred therefrom thereafter. [*N.J.S.A.* 2A:14–6]

Every action at law for real estate shall be commenced within 20 years next after the right or title thereto, or cause of such action shall have accrued. [*N.J.S.A.* 2A:14–7]

[2]*N.J.S.A.* 2A:14–30 provides:

Thirty years' actual possession of any real estate excepting woodlands or uncultivated tracts, and 60 years' actual possession of woodlands or uncultivated tracts, uninterruptedly continued by occupancy, descent, conveyance or otherwise, shall, in whatever way or manner such possession might have commenced or have been continued, vest a full and complete right and title in every actual possessor or occupier of such real estate, woodlands or uncultivated tracts, and shall be a good and sufficient bar to all claims that may be made or actions commenced by any person whatsoever for the recovery of any such real estate, woodlands or uncultivated tracts.

[3]*N.J.S.A.* 2A:14–31 states:

language but not in essential purposes from the original statutes enacted in this State relating to the limitation of suits respecting the title of lands." *Braue v. Fleck,* 23 *N.J.* 1, 7 (1956). The essential elements of each are the same. *N.J.S.A.* 2A:14–6 and –7 bar actions to enforce rights of entry or to gain title 20 years after such claims accrue. *N.J.S.A.* 2A:14–30 vests title in the claimant after 30 years actual uninterrupted possession, except that there must be 60 years actual uninterrupted possession of "woodlands or uncultivated tracts." *N.J.S.A.* 2A:14–31 vests title in the possessor of any real estate under color of title after 30 years. Generally to acquire title by adverse possession, the possession must be actual and exclusive, adverse, visible or notorious, and continued and uninterrupted. *Foulke v. Bond,* 41 *N.J.L.* 527, 545 (E. & A.1879).

The heart of the doctrine is the failure of the owner to commence an action for recovery of the land within the designated period of the statute of limitations. That failure is relevant only if the owner has had notice, actual or constructive, that another considers himself to be, or is using the property as, the owner. Therefore, one criterion of adverse possession is that the use must be so open and notorious that an ordinarily prudent person would be put on notice that the land is in actual possession of another. A possession is adverse if the claimant's use is "under a claim of right, pursued with an intent to claim as against the true owner in such circumstances of notoriety that

Thirty years' actual possession of any real estate, uninterruptedly continued by occupancy, descent, conveyance or otherwise, wherever such possession commenced or is founded upon a proprietary right duly laid thereon, and recorded in the office of the surveyor general of the division in which the location was made, or in the office of the secretary of state, pursuant to law, or wherever such possession was obtained by a fair bona fide purchase of such real estate from any person in possession thereof and supposed to have a legal right and title thereto, or from the agent of such person, shall be a good and sufficient bar to all prior locations, rights, titles, conveyances, or claims whatever, not followed by actual possession as aforesaid, and shall vest an absolute right and title in the actual possessor and occupier of all such real estate.

the owner will be aware of the fact and thus alerted to resist the acquisition of the right by the claimant before the period of adverse possession has elapsed." *Predham v. Holfester,* 32 *N.J. Super.* 419, 424 (App.Div.1954) (emphasis deleted). Any entry, whether mistaken or intentionally hostile, is sufficient to support a claim of title by adverse possession, provided it is exclusive, continuous, uninterrupted, visible and notorious. *Mannillo v. Gorski,* 54 *N.J.* 378, 386 (1969).

▆▆▆ The burden of proof rests on the party claiming title by adverse possession. After a party introduces evidence of an open, continuous, uninterrupted exclusive use for the prescriptive period with the acquiescence of the owner, a presumption arises that the use was adverse except when the land is vacant, unimproved, unenclosed, and the use is casual rather than customary. *Plaza v. Flak,* 7 *N.J.* 215, 222 (1951); *see Baker v. Normanoch Ass'n, Inc.,* 25 *N.J.* 407, 420 (1957). It is accepted that "to make out title, through adverse possession, with respect to lands so far as they are swampy or largely undeveloped, there need not be as extensive and as continous control as with respect to improved lands." *Wilomay Holding Co. v. Peninsula Land Co.,* 36 *N.J.Super.* 440, 445 (App.Div.), certif. denied, 19 *N.J.* 618 (1955). However, there must still be "proof establishing not only actual acts of ownership over the property in dispute but also a certain frequency in the performance of those acts, sufficient to amount, in the eyes of the law, to a continuity of possession during the statutory period." 36 *N.J.Super.* at 445–46. The burden of proof always remains on the party claiming title by adverse possession to establish the aforementioned elements by a preponderance of the evidence.

▆▆▆ We find on our review of this record that the plaintiffs did not meet their burden.[4] Ordinarily, we would be reluctant

---

[4] When Taylor purchased the land for the Morris and Essex Railroad (plaintiffs being the last successors in interest of the railroad), a title search would have disclosed the Canal Company's ownership of the land in question.

to disturb the factual findings of a trial court in this regard, *Rova Farms Resort v. Investors Ins. Co.*, 65 *N.J.* 474, 483–84 (1974), but we do so here in the exercise of our original jurisdiction under *R.* 2:10–5, particularly since the findings rest on an undisputed record and not on matters of credibility, demeanor or personal view of the premises. The trial court found that adverse possession occurred between 1847 and 1869 when plaintiffs' predecessor in title, Samuel Daniels, had record title to the land adjoining the 6.89 acres owned by the Canal Company. As noted above, Daniels had also acquired his land from Van Duyne, but his deed expressly excluded the 6.89 acres that had been conveyed to the Canal Company. There is no direct evidence that Samuel Daniels occupied or used the Canal Company property during those years. The plaintiffs claim to have established that occupation or use by the deed dated September 10, 1869 from Daniels into Taylor, in which Daniels mistakenly conveyed the entire Van Duyne property (including the tract previously transferred to the Canal Company). Plaintiffs assert that the reference in the deed to a right of way to travel over a route to a public highway from the Van Duyne property established Daniels' adverse use. However, we do not know either when and over what period of time the route existed or where it was located on the Van Duyne property. There is no proof that the road existed during the 20-year period in question. Indeed, it may have led onto parts of the Van Duyne tract substantially removed from the Canal Company property.

The railroad's alternative adverse possession claims, based on periods commencing after Taylor obtained title on September 10, 1869, are subject to several infirmities. Though the trial court referred generally to the 30- and 60-year statutes, it made no findings of fact supportive of specific limitation periods. Plaintiffs rely upon two courses of conduct to prove that the Canal Company and the defendant were put on notice of the railroad's use: payment of taxes and the clearance of the tract of brush and trees by railroad employees.

Edward Butler, the railroad's manager of property, testified that he had been so employed since 1931. He did not know if the railroad had ever used the 6.89 acres in question for any purpose, but said that the railroad had sent employees to clear the land of brush and trees from time to time. He did not testify as to when such clearances occurred or how often. It is apparent that this work occurred after the defendant North Jersey District Water Supply Commission took title in 1927. Robert Wieland, plaintiffs' engineer, testified that a physical survey of the land made before the trial indicated that the average age of the trees was 40 years, with the exception of a number of large trees randomly distributed throughout, which were about 75 years old. He also stated that the land was marshy, wet and extremely difficult to cross.

█ Municipal tax bills disclosed that the railroad was assessed and paid taxes on a 35-acre tract of land. This allegedly included the disputed acreage. The tax bills sent to the defendant also referred to the total acreage being assessed, which was in excess of 94 acres. The tax map did not show the 6.89 acres as a separate piece of property. The defendant, of course, was unaware of the tax bill being sent to the railroad. Indeed, the defendant believed that its tax bill covered all the acreage it owned, including the 6.89 acres. Moreover, payment of taxes alone is insufficient to give rise to adverse possession. Mere entry on uncultivated and unenclosed land under a color of title and occasional acts of trespass over a 20-year period, though coupled with payment of taxes, has been held to be insufficient. *Foulke v. Bond,* 41 *N.J.L.* 527, 544 (1879) (dictum). *See also Caruso v. Hunt,* 69 *N.J.Super.* 447, 451 (Ch.Div.1961) (holding payment of taxes "would hardly satisfy the elements necessary to qualify one as an adverse possessor . . . .").

█ We need not resolve whether any refinements should be made between the nature of the possession under the 20-, 30- or 60-year statutes, *see Braue v. Fleck,* 23 *N.J.* 1, 13 (1965); *Rullis v. Jacobi,* 79 *N.J.Super.* 525 (Ch.Div.1963), for it is appar-

ent that plaintiffs' proofs fall far short of establishing notorious, actual, adverse, exclusive, continuous and uninterrupted conditions for the period from 1847 to 1869 or for any period before 1927. Since 1927 adverse possession could not have effectively occurred because the defendant North Jersey District Water Supply Commission was the title owner. It is well-established that adverse possession does not run against the State. *Quinlan v. Fair Haven,* 102 *N.J.L.* 443, 446 (E. & A.1925); *Cross v. Mayor of Morristown,* 18 *N.J.Eq.* 305, 310–13 (Ch.1867). Similarly, there can be no adverse possession against subdivisions of the State, at least with respect to property dedicated to public use. *Osterweil v. Newark,* 116 *N.J.L.* 227, 233 (E. & A.1935); *see Annot.,* 55 *A.L.R.2d* 554, 616 (1957).

Justice Mountain, while sitting in the Chancery Division, in *North Jersey Dist. Water Supply Comm'n v. Newark,* 103 *N.J. Super.* 542 aff'd, 52 *N.J.* 134 (1968), characterized defendant as "a public body, politic and corporate, exercising public and essential government functions in the interest of the public health and welfare. *N.J.S.A.* 58:5–35." 103 *N.J.Super.* at 549. To the same effect, see *K.S.B. Tech. Sales v. North Jersey Dist. Water Supply,* 75 *N.J.* 272, 282–85 (1977), appeal dismissed, 435 *U.S.* 982, 98 *S.Ct.* 1635, 56 *L.Ed.2d* 76 (1978). Being a subdivision of the State and engaged in a governmental function of transmitting water through pipelines located in the canal, the defendant was immune from adverse possession by the railroad.

Defendant's status is to be distinguished from that of the Canal Company. The Canal Company was not a subdivision or instrumentality of the State immune from adverse possession. It was created by an act in 1824 as a "body corporate and politic in law." 1824 N.J. Laws 158. The act simply granted a corporate charter to a group of individuals who were willing to undertake the task of constructing and operating a canal.[5] H.

---

[5] New Jersey did not have a general corporation act until 1846. *N.J.Rev. Stat.* 139 (1846), 1846 N.J.Laws 16.

Cranmer, "Internal Improvements in New Jersey: Planning the Morris Canal," 69 *Proceedings of the N.J.Hist.Soc.* 324, 334–35 (1951). In addition the incorporators were authorized to carry on a banking business. Though chartered by the State, Morris Canal was a private enterprise and as such its property was subject to adverse possession.

The defendant also contends that while the Canal Company owned the 6.89 acres, it was not subject to adverse possession because of the State's remainder interest in the land. This interest was ascribable to a charter provision that after 99 years the State had an option to purchase the canal and "its appurtenances" by paying the fair value of the land. If the option were not exercised, then at the end of an additional 50 years the canal "with its appurtenances" would become the sole property of the State. It is extremely doubtful that the 6.89 acres was an appurtenance. The side of the 6.89 acres that is nearest and parallel to the canal lies at least 200 feet from the canal. The land between the disputed acreage and the canal is not owned by any of the parties in this case. Although one end of the 6.89 acres connected with another Canal Company tract that did adjoin the canal, there was no evidence that because of that juncture the 6.89 acres was used in any way in connection with the canal. In any event the issue need not be decided since plaintiffs have failed to prove that they are entitled to adverse possession.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*For reversal*—None.