JAMES J. DEVINS AND MARY J. DEVINS, HUSBAND AND
WIFE, PLAINTIFFS–APPELLANTS, v. BOROUGH OF
BOGOTA, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 12, 1989—Decided November 1, 1989.

Before Judges GAULKIN, SCALERA, and D'ANNUNZIO.

*Allen M. Bell* argued the cause for appellants (*Jacobs, Bell and Baumol,* attorneys, *Doreen E. McManimon,* on the brief).

*Joseph G. Monaghan* argued the cause for respondent (*De-Marrais and Monaghan,* attorneys).

The opinion of the court was delivered by

SCALERA, J.A.D.

The narrow issue presented is whether private citizens may, by adverse possession, gain title to a piece of municipally owned property which had been acquired through a tax foreclosure and which is not dedicated or used for a public purpose. We hold that they may not do so.

The essential facts are not in dispute, making the issue ripe for determination as a matter of law. *R.* 4:46–2. Plaintiffs are the owners of a one-family dwelling at 132 Fairview Avenue in the Borough of Bogota, known as Lots 11 and 11A in Block 98 of the local tax assessment map, measuring 50 feet by 100 feet. They purchased the property on June 14, 1965 from persons who had owned it since 1958.

Next to that property is Lot 10, Block 98, measuring 25 feet by 100 feet. In November of 1962, the Borough had acquired

title to that vacant property through an *in rem* foreclosure of a tax sale certificate pursuant to *N.J.S.A.* 54:5–104.29 *et seq.* Thereafter, the lot was permitted to remain vacant and unused by the Borough. Plaintiffs, as well as their predecessors in title, proceeded to utilize it as though it was a part of their property. A fence was constructed by plaintiffs' predecessors between lot 9 and 10, even before the Borough had foreclosed, creating the impression that lot 10 was part of plaintiffs' property. The front portion of lot 10 and part of lot 11 were paved and used for parking. During plaintiffs' ownership, they placed a shed and a basketball backboard on the lot. In other words, their uses gave all the indicia of the Borough's lot being part and parcel of plaintiffs' property.

The record indicates that the Borough kept the empty lot on its tax rolls, even to the extent that in 1986 it was assessed for tax purposes at $12,500. However, since the foreclosure, no taxes have been paid on the lot by anyone. When plaintiffs acquired title to their own property they also received a quit claim deed to the Borough's lot from their predecessors which they duly recorded.

In 1985, after using the lot for over 20 years plaintiffs, in a letter to the Borough, claimed title to it on the grounds of adverse possession. However, the Borough rejected that claim. As a result, plaintiffs eventually filed the instant action on December 14, 1987 seeking to obtain title to the property by prescription. Ultimately, the trial judge granted summary judgment in favor of the Borough ruling that "adverse possession will not run against a municipality."

On this appeal, plaintiffs urge that since the Borough had failed to use this lot for a "public purpose," it was subject to alienation and acquisition by adverse possession just as with land held by "private individuals when acting in a proprietary fashion." They also argue that the elements of adverse possession have been clearly established. However, we need not address that issue in light of our disposition.

The acquisition of title to property by adverse possession involving actual and exclusive, adverse, visible or notorious and continued and uninterrupted possession is well settled in this State. *Patton v. North Jersey Dist. Water Supp. Comm'n.*, 93 *N.J.* 180, 186 (1983); *Braue v. Fleck*, 23 *N.J.* 1, 16 (1956). Such a right, however, was not recognized at common law. *Predham v. Holfester*, 32 *N.J.Super.* 419, 421–423 (App.Div.1954). Rather, the foundation for such acquisition lies in the failure of the true owner to commence an action within the period designated by the appropriate statute of limitations. *Mannillo v. Gorski*, 54 *N.J.* 378, 387 (1969). Apart from that, no title can be gained by prescription. *O'Keeffe v. Snyder*, 83 *N.J.* 478, 494 (1980).

Property may be acquired in such a fashion under either (1) *N.J.S.A.* 2A:14–6 [1] and 2A:14–7,[2] (2) *N.J.S.A.* 2A:14–30,[3] or (3) *N.J.S.A.* 2A:14–31.[4] While these statutes differ slightly in

---

[1] *N.J.S.A.* 2A:14–6. Every person having any right or title of entry into real estate shall make such entry within 20 years next after the accrual of such right or title of entry, or be barred therefrom thereafter.

[2] *N.J.S.A.* 2A:14–7. Every action at law for real estate shall be commenced within 20 years next after the right or title thereto, or cause of such action shall have accrued.

[3] *N.J.S.A.* 2A:14–30. Thirty years' actual possession of any real estate excepting woodlands or uncultivated tracts, and 60 years' actual possession of woodlands or uncultivated tracts, uninterruptedly continued by occupancy, descent, conveyance or otherwise, shall, in whatever way or manner such possession might have commenced or have been continued, vest a full and complete right and title in every actual possessor or occupier of such real estate, woodlands or uncultivated tracts, and shall be a good and sufficient bar to all claims that may be made or actions commenced by any person whatsoever for the recovery of any such real estate, woodlands or uncultivated tracts.

[4] *N.J.S.A.* 2A:14–31. Thirty years' actual possession of any real estate, uninterruptedly continued by occupancy, descent, conveyance or otherwise, wherever such possession commenced or is founded upon a proprietary right duly laid thereon, and recorded in the office of the surveyor general of the division in which the location was made, or in the office of the secretary of state, pursuant to law, or wherever such possession was obtained by a fair bona fide

language the essential elements of each are the same. *N.J.S.A.* 2A:14–6 and 2A:14–7 bar actions to enforce rights of entry or to gain title 20 years after such claims accrue. *N.J.S.A.* 2A:14–30 vests title in the claimant after 30 years of actual uninterrupted possession, except that there must be 60 years of actual uninterrupted possession of "woodlands or uncultivated tracts." *N.J.S.A.* 2A:14–31 vests title in the possessor of any real estate under color of title after 30 years. *Patton, supra,* 93 *N.J.* at 185–186.

However interesting, we need not resolve which of these statutes are properly applicable here. *Cf. Patton,* at 189. For our purposes we will assume, as did the trial judge, that plaintiffs have established all of the elements of adverse possession. Hence, we need decide only whether adverse possession may properly operate against the Borough in these circumstances so as to vest title in the plaintiffs.

There is no question that the general rule is that title to property held by a municipal corporation which is dedicated to public use cannot be acquired by adverse possession. *Osterweil v. Newark,* 116 *N.J.L.* 227, 233 (E & A 1935). See Annotation, *Acquisition by Adverse Possession or use of Public Property Held by Municipal Corporations or other Governmental Unit Otherwise than for Streets, Alleys, Parks, or Common,* 55 *A.L.R.*2d 554, 612; 10 McQuillan, *The Law of Municipal Corporations,* § 28.55 at 183 (3d ed. 1981); 2 *C.J.S. Adverse Possession,* § 20, page 671; 3 *Am.Jur.*2d, *Adverse Possession,* § 270, pages 360–362. The latter authorities, however, also indicate that, absent the enactment of specific statutes to the contrary, almost all other jurisdictions having occa-

purchase of such real estate from any person in possession thereof and supposed to have a legal right and title thereto, or from the agent of such person, shall be a good and sufficient bar to all prior locations, rights, titles, conveyances, or claims whatever, not followed by actual possession as aforesaid, and shall vest an absolute right and title in the actual possessor and occupier of all such real estate.

sion to pass on the issue have determined that where the property sought to be affected is held by a municipality in "a proprietary, nongovernmental capacity," the doctrine of adverse possession will serve to alienate title "upon the same condition as in the property of a private owner." McQuillan, *supra,* at 183. *Contra, Grand Lodge of Georgia, Independent Order of Odd Fellows v. City of Thomasville, et al,* 226 *Ga.* 4, 172 *S.E.*2d 612 (1970). The precise issue does not appear to have been decided in this state.

In *Patton, supra,* 93 *N.J.* at 190, our Supreme Court noted, but did not address the issue when it said,

> Similarly, there can be no adverse possession against subdivisions of the State, *at least with respect to property dedicated to public use. Osterweil v. Newark,* 116 *N.J.L.* 227, 233 (E & A 1935); see Annot. 55 *A.L.R.*2d 554, 616 (1957). [Emphasis added].

Plaintiffs here urge that we follow the view of the majority of courts in this country. Since the Borough has merely permitted the property to lie fallow, they claim that it is not "dedicated to public use" and has been relegated to a "proprietary" use, thus making it vulnerable to alienation by adverse possession. They point out that allowing them to thereby acquire title by adverse possession would serve to return the property to the income producing tax rolls of the Borough.

However, attempts to distinguish between governmental and proprietary functions and uses have not been easy. For example, in the field of tort liability, our Supreme Court wrestled with this problem in *B.W. King, Inc. v. West New York,* 49 *N.J.* 318 (1967). In that case plaintiffs sought damages resulting from a fire which originated on lands owned by the defendant municipality. The municipality had secured title to the property in 1959 when it purchased the land at a public sale in order to protect its existing tax lien. Over the years the municipality did not use the property for any purpose but did allow barges to tie up at two of the old piers on the property in exchange for payment of a daily fee. On August 18, 1961, three trespassing

teenage boys started the fire by throwing a lighted cigarette into a coal hopper.

Justice Haneman, speaking for the Court, noted that "the proprietary governmental test" has fallen into "disrepute" as a basis for determining tort liability (obviously before the passage of our Tort Claims Act, *N.J.S.A.* 59:1–1 *et seq* ). *Id.*, 49 *N.J.* at 324. That case represented a "classical example" of the difficulty encountered in such an analysis,

> The defendant [municipality] acquired and held title to the premises solely in aid of its tax collecting power. The collection of taxes by a municipality has been held to be a governmental function. [Cites omitted]. On the other hand ... [t]he operation of a dock or pier with the charge of a fee or toll for wharfage has been held to be a proprietary function [cites omitted]. *Id.* 49 *N.J.* at 325.

We feel that such a "proprietary governmental test" approach is likewise fraught with difficulty if it were to be applied in this area. Those authorities which have allowed acquisition of municipal properties by prescription base their decision on the conclusion that if property is not being held for any particular public use or trust it should be subject to adverse possession just as with privately held property.

However, it is beyond cavil that there is a dramatic difference between conducting the affairs of private individuals and municipal governments. *Cf. N.J.S.A.* 59:1–2 concerning the Tort Claims Act which points out that,

> ... the Legislature recognizes that while a private entrepreneur may readily be held liable for negligence within the chosen ambit of his activity, the area within which government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done.

Additionally, we see a great many difficulties arising if properties acquired through tax foreclosures were subject to alienation by adverse possession. In large metropolitan cities of this State, many landowners simply have abandoned many properties, forcing those municipalities to take title due to the lack of payment of taxes. In our judgment it would be unfair to allow private persons to take over such properties by prescriptive possession simply because such a city is unable to

monitor those many properties. So too, in rural or small communities, where management personnel is scarce, the acquisition of such properties through adverse possession would likewise result in the loss of valuable assets simply because of their inability to pay for such supervisory personnel.

Lastly, we do not believe that the Legislature intended such a result when it passed the various statutes of limitation authorizing the acquisition of title to land by adverse possession. We foresee that governmental subdivisions would find it difficult, costly and, in some cases, impossible to monitor properties which they acquired by tax foreclosure against prescription by private persons.

This conclusion becomes even more understandable when one considers that our Legislature has passed extensive legislation providing for the manner in which municipalities may acquire, retain and dispose of its properties. *See N.J.S.A.* 40:60–1 *et seq.*, some of which has been repealed and is now found in *N.J.S.A.* 40A:12–1 *et seq.* We perceive no intention in the various statutes of limitation enactments requiring us to supplant these statutory provisions by divestment through prescription.

In this vein we note that the record is barren of evidence of any attempt by plaintiffs or their predecessors to otherwise acquire the lot in question by seeking to purchase it from the Borough. *Cf. N.J.S.A.* 40A:12–13.2. Instead, they used it over the years without permission and without paying any taxes or other consideration for such use. *Cf. Patton, supra,* 93 *N.J.* at 189.

Under such circumstances we see no persuasive reason to allow plaintiffs to acquire title to this lot by adverse possession. Thus, we agree with the Georgia Supreme Court that prescriptive rights arising out of the doctrine of adverse possession do not run against a governmental subdivision in these circumstances regardless of whether the land is deemed to be dedicated to a public use or not. *Grand Lodge of Georgia,*

*Independent Order of Odd Fellows v. City of Thomasville*, 226 *Ga.* 4, 172 *S.E.*2d 612 (1970). As we said in *State v. Maas & Waldstein Co.*, 83 *N.J.Super.* 211 (App.Div.1964) in the context of condemnation proceedings by the State,

Adverse possession does not run against the State; there can be no title by prescription against the public. *Quinlan v. Fair Haven*, 102 *N.J.L.* 443, 486 (E & A 1925) citing *Hoboken Land & Improvement Co. v. Mayor, etc., of Hoboken*, 36 *N.J.L.* 540 (E & A 1873). [*Maas*, 83 *N.J.Super.* at 222].

Affirmed.