NORTH JERSEY DISTRICT WATER SUPPLY COMMISSION, A PUBLIC AGENCY, PLAINTIFF-RESPONDENT, v. CITY OF NEWARK, DEFENDANT-APPELLANT, AND TOWN OF BLOOMFIELD, *ET AL.*, DEFENDANTS.

Argued June 4, 1968—Decided June 28, 1968.

*Messrs. Sam Weiss and Ferdinand J. Biunno* argued the cause for appellant (*Mr. Philip E. Gordon*, Corporation Counsel, attorney).

*Mr. Oscar R. Wilensky* argued the cause for respondent North Jersey District Water Supply Commission; *Mr. Robert L. Solan,* Deputy Attorney General, argued the cause for respondents The State of New Jersey and the Department of Conservation and Economic Development (*Messrs. William Gural and Robert L. Solan,* Deputy Attorneys General, of counsel; *Hon. Arthur J. Sills,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered

PER CURIAM.. The judgment appealed from is affirmed for the reasons expressed by Judge Mountain in the Superior Court, Chancery Division, 103 *N. J. Super.* 542 (*Ch. Div.* 1968).

The complaint filed herein sought a declaration that the two water supply contracts entered into between the Commission, the City of Newark and a number of other municipalities were valid and enforceable. The principal and underlying contract dated July 13, 1965 was prepared by the Commission and submitted to a number of municipalities for their approval. The municipalities were Bayonne, Bloomfield, Cedar Grove, Elizabeth, Glen Ridge, Kearny, Newark, Nutley, South Orange, Verona and West Caldwell. It recited the terms upon which the Commission agreed to deliver water, the quantity of water each municipality agreed to receive (called its "proprietary allotment"), and set forth the manner in which the cost of the water was to be determined. The compact specified that it was not to become effective until executed by municipalities having proprietary allotments of water aggregating at least 50 million gallons daily. Newark became a signatory on October 1, 1965. On September 12, 1966, Bayonne executed the agreement. All of the other municipalities mentioned above having previously become parties, Bayonne's joinder brought the proprietary allotments of water contracted for to a total of 60.925 million gallons daily. Thus by its terms the agreement became operative as of September 12, 1966.

136

As Judge Mountain's opinion reveals, on April 6, 1966, prior to the operative date referred to, Newark entered into a second and independent agreement with the Commission and the municipalities named in the principal contract. This contract was called a cooperation agreement between Newark, the Commission and the contracting municipalities. Its purpose was to facilitate accomplishment of the basic compact by permitting utilization of Newark's existing transmission or distribution system by any of the contracting municipalities on terms, payments and methods to be agreed upon. Some of the named municipalities took advantage of this cooperation agreement.

Although all of the contracting municipalities, as well as Newark, were made defendants in this declaratory judgment proceeding, only Newark took the position that the two contracts were invalid. Upon the trial court's declaration of their validity and enforceability, Newark alone appealed, and we granted the Commission's request for certification prior to consideration of the matter in the Appellate Division. On argument before us, Newark challenged only the portion of the judgment below which sustained the basic contract between the Commission and Newark that became operative on September 12, 1966. The attack presented is the same as that advanced below, i e., the contract is void because its provisions for determination of the price to be paid by Newark for water are too vague and uncertain to be enforceable.

As Judge Mountain's opinion demonstrates, the contention is clearly without merit. See *Hollister v. Fiedler*, 30 *N. J. Super*. 203 (*App. Div.* 1954) affirmed 17 *N. J.* 239 (1955) ; *McClung Drug Co. v. City Realty and Investment Co.*, 91 *N. J. Eq.* 216, 218 (*Ch.* 1919) affirmed 92 *N. J. Eq.* 237 (*E. & A.* 1920) ; *Jersey City v. Town of Harrison*, 71 *N. J. L.* 69, 70 (*Sup. Ct.* 1904) affirmed 72 *N. J. L.* 185 (*E. & A.* 1905). See also *N. J. S.* 12A :2-305(1)(c), (2). We repeat the observation made at two points in his opinion that the provisions for fixing the rates or price to be paid

for the water Newark has contracted to take "carefully follow" the statutory formula and requirements for their determination. See *N. J. S. A.* 58:5–37; 58:5–40. Moreover, it may be noted that under the contract, after the Commission, through use of the specified components, has ascertained what the charges or rates should be for the water supplied, an opportunity to be heard as to their fairness and reasonableness must be given to the contracting municipalities before they are imposed.

Affirmed.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.