MANASQUAN RIVER REGIONAL SEWERAGE AUTHORITY, A BODY POLITIC AND CORPORATE OF THE STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. OCEAN COUNTY UTILI-TIES AUTHORITY, A BODY POLITIC AND CORPORATE OF THE STATE OF NEW JERSEY, DEFENDANT–THIRD PARTY PLAINTIFF–RESPONDENT, v. BOLAND, SAFFIN, GORDON & SAUTTER, THIRD–PARTY DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued January 19, 1988—Decided March 10, 1988.

Before Judges O'BRIEN and HAVEY.

*Charles E. Starkey* argued the cause for appellant (*Starkey, Kelly, Blaney & White,* attorneys; *Charles E. Starkey* of counsel and on the brief with *Mark A. Troncone*).

*Richard H. Woods* argued the cause for respondent (*Hiering & Dupignac,* attorneys; *Richard H. Woods* on the brief).

PER CURIAM.

Plaintiff, Manasquan River Regional Sewerage Authority (Manasquan) appeals from an order for summary judgment dismissing its complaint against defendant Ocean County Utilities Authority (OCUA).

Manasquan is a regional sewerage authority organized under *N.J.S.A.* 40:14A–1, *et seq.* OCUA is a utilities authority organized under *N.J.S.A.* 40:14B–1, *et seq.* On September 16, 1981, the parties entered into a written contract under which OCUA agreed to treat and dispose of wastewater collected by Manasquan within its service area at rates "not ... more favorable to [Manasquan] than the rates applicable ... to sewage so delivered and discharged by any other participants in the [OCUA] district." The agreement provided that "[Manasquan] has determined that it will be economical and otherwise advantageous to it to have sewage and other wastes originating within its

district treated and disposed of by [OCUA]...." The rate OCUA charged Manasquan and its other participants was $850 per million gallons of wastewater for the years 1981, 1982 and 1983. In 1983, OCUA permanently financed construction of its wastewater treatment plant in Ocean County and issued long-term "Wastewater Revenue Bonds," totalling more than $207,-000,000. After notice and a public hearing, OCUA then raised its rates to $1,800 effective January 1, 1984.

In Count One of its complaint, Manasquan sought damages equal to the difference between the $850 rate originally charged at the time the 1981 agreement was entered into, and the $1,800 rate which became effective January 1984. Manasquan alleged that prior to the execution of the agreement, OCUA misrepresented to Manasquan, and to state and federal regulatory and funding agencies, information about flow projections and projected user charges on which Manasquan and the agencies relied. In particular, Manasquan charged OCUA misrepresented to it and to the federal and state agencies that the $850 rate would remain constant through 1984, when OCUA knew the rate would likely be increased in 1984. Manasquan claimed that as a result of OCUA's "misleading and inaccurate data," the state and federal agencies ordered Manasquan to abandon its plan to construct its own treatment facility and to transmit its wastewater to the facility operated by OCUA.

In Count Two of Manasquan's complaint, it alleged that OCUA failed to establish rates during its construction and start-up years that were sufficient to pay the debt service and cost of operation of the facility. Manasquan alleged that instead, OCUA "continually borrowed money to finance all of its obligations ... and thereby maintained an artificially low rate for its participants." Manasquan alleged that the $1,800 rate results "in an unlawful imposition of costs attributable solely to current and prior users ..." which should not be borne by Manasquan and future users. Manasquan therefore demanded that OCUA charge Manasquan and other "future users" a rate reflecting only "original capital cost factors."

■ We affirm the order for summary judgment substantially for the reasons expressed by Judge Ricciardi in his comprehensive letter opinion dated November 21, 1986. We agree that any statements made by OCUA officials to Manasquan and the public agencies as to future rates were approximate projections and not material misrepresentations of actual fact. As Judge Ricciardi found:

It is not a representation of fact. It is simply a projection. It cannot reasonably be understood by anyone knowledgeable in matters of this nature to constitute an unalterable fact.

. . . . . . . .

During negotiations, [Manasquan] had the right to investigate to the fullest extent. Indeed, [Manasquan] conducted its own studies. There was equal access to information on both sides. OCUA did not prevent [Manasquan] from making any investigation that [Manasquan] deemed necessary. [Manasquan] chose to rely on OCUA's estimate as to the projected rates. However, both parties understood these figures were predictions and not warranties. In the oral arguments, [Manasquan] conceded that it anticipated that the rates might rise above the estimated $850.00 PMG within the four years between 1981 and 1985. [Manasquan's] objection is that these rates went higher than it anticipated. Such a claim, however, is not meritorious under the circumstances of this case.

The judge's conclusion is legally sound and supportable by the undisputed facts presented at the summary judgment motion. *See Middlesex County Sewer. Auth. v. Bor. of Middlesex*, 74 *N.J.Super.* 591, 605 (Law Div.1962), aff'd o.b. 79 *N.J.Super.* 24 (App.Div.), certif. den. 40 *N.J.* 501 (1963); *Beverly Sewerage Auth. v. Delanco Sewerage Auth.*, 65 *N.J.Super.* 86, 97 (Law Div.), aff'd o.b. 70 *N.J.Super.* 575 (App.Div.1961), aff'd o.b. 38 *N.J.* 354 (1962); *North Jersey Dist. Water Sup. v. Newark, et al.*, 103 *N.J.Super.* 542, 549–551 (Ch.Div.), aff'd 52 *N.J.* 134 (1968).

We add only that we find no legal basis for Manasquan's equitable estoppel claim, *see Foley Machinery Co. v. Amland Contractors, Inc.*, 209 *N.J.Super.* 70, 75–76 (App.Div.1986), nor is there a legal basis for a cause of action predicated on the doctrine of promissory estoppel, *see Royal Associates v. Concannon*, 200 *N.J.Super.* 84, 91–92 (App.Div.1985).

■ We also agree that Manasquan has no claim for a downward adjustment of its rate on the basis that OCUA allegedly undercharged rates to participants during its early years of operation. Manasquan and its experts had access to OCUA's records before it contracted with OCUA. Several reports were prepared and were available to Manasquan, as were OCUA's books and records of its debt service and operating costs. If OCUA charged rates during construction and start-up years which were inadequate to pay for the cost of debt service and operation, Manasquan could have made that determination and demanded that it be charged at a lower rate. Instead, it agreed that its rate would not be more favorable than the rate charged other participants who have contracted with OCUA for the disposal of wastewater.

The order for summary judgment is affirmed.