708 A.2d 1211

FRANK J. MANDIA, JR. AND MIKE BROWN, PLAINTIFFS–APPELLANTS, v. EVERETT R. APPLEGATE AND GERARD DAGOSTINO, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 23, 1998—Decided March 27, 1998.

436

Before Judges SKILLMAN, EICHEN and STEINBERG.

*Richard H. Mills* argued the cause for appellants.

*Robert V. Paschon* argued the cause for respondents (*Paschon and Feurey*, attorneys; *Edward T. Feurey*, on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

In June 1976 plaintiffs Frank Mandia and Mike Brown purchased a tract of land in Seaside Park, New Jersey, known as Funtown Pier. At the time of the purchase, Funtown Pier consisted of a small, ocean-front amusement park occupied by various concessionaires. In order to raise money to buy the property, plaintiffs approached a number of the concessionaires and proposed that they purchase ninety-nine year leases instead of continuing to rent their premises on a short term basis. Plaintiffs' financing plan was successful and prior to the closing they obtained commitments for fourteen 99–year leases, consisting of about 20% of the total property. Since that time plaintiffs have maintained and managed Funtown Pier, buying back some of the 99–year leases and selling others, while renting the remaining concession stands to short-term tenants. The area has generally improved over the years and is now completely covered with boardwalk.

The first of the concessionaires to agree to enter into a 99–year lease were defendants Applegate and Dagostino, who acquired their property for $184,505. Defendants tore down an old luncheonette that was on the site and replaced it with a two-story steel and concrete building. The building traced the "footprint" of the space defendants had leased and had a second floor overhang which extended over the walkway areas of the boardwalk approximately five feet on the east, south, and west. Defendants operated several business ventures from this building over the years, the latest and most successful being the Silver Apple Surf Shop which sells upscale beach wear.

Shortly after opening his business on the Funtown Pier, Applegate [1] asked Brown if he could display some clothing items under

---

[1] Although the property owners are listed as Applegate and Dagostino, there is little in the record concerning the extent of Dagostino's involvement in the

the overhang on the south side of the building for an end of season clearance sale. Brown agreed to the request as a special favor, telling Applegate that he was grateful to him for being the first person to enter into a 99–year lease. From that time forward, Applegate displayed merchandise on the boardwalk under the building overhang without ever again asking Brown's permission. As time went by Applegate made greater and greater use of the overhang area, displaying racks of clothing and other merchandise on a more-or-less permanent basis.

In 1994 Applegate telephoned Brown in Florida and told him that he was planning to install an electrically-operated awning which would extend over some eight feet of boardwalk beyond the southerly overhang to his building. Upon returning to New Jersey, Brown had lunch with Applegate and told him that the awning represented more use of the boardwalk area than Applegate's previous displays of merchandise and that he expected to be compensated for it. When Brown said that he felt that $10,000 was a fair seasonal rent for the area, Applegate replied "how about $5,000, how about $2,000, whatever." Brown laughed and "said, well how about $5,000." The two agreed on $5,000 and decided to let Mandia, who is an attorney, draw up a written agreement concerning Applegate's use of the boardwalk.

After consulting with an attorney who advised him that the proposed agreement gave him nothing, Applegate told Brown that he would not sign it. Nevertheless, Applegate continued to display his merchandise under the overhang and awning during the 1994, 1995 and 1996 seasons, during which time he refused to make any payment to plaintiffs for this use.

On June 19, 1995, plaintiffs' counsel sent defendants a formal demand that they cease using the boardwalk for the display of merchandise. The letter reminded the defendants that their lease provided that they could not encumber or obstruct the boardwalk

---

business venture. Applegate seems to have managed the businesses and to have made all of the decisions that are the subject of this lawsuit.

or entrance to their building and warned that the lease also provided that "if the tenant defaults in any of its obligations ... and fails to cure said default after 30 days' notice from the landlord, the landlord may reclaim the premises and the lease will be at an end." On July 27, 1995, plaintiffs' counsel sent defendants another letter which formally notified them that because of their continued use of the boardwalk area, plaintiffs were invoking the forfeiture clause of the lease and declaring defendants' leasehold to be at an end. Defendants ignored both of these letters and continued to operate the Silver Apple Surf Shop as before, including the unauthorized use of the boardwalk under the overhang and awning.

Plaintiffs then brought the present lawsuit seeking an order enjoining defendants' use of the boardwalk area adjoining their property for the display of merchandise, compensating plaintiffs for defendants' past unauthorized use of this property and declaring that defendants had forfeited their leasehold. The case was tried over four days, at the conclusion of which the court issued an oral opinion. The court concluded that even though plaintiffs own the boardwalk under the overhang to defendants' building, they "waived" their right to prevent defendants from displaying merchandise in this area because they had previously permitted this use. However, because defendants did not show a similar pattern of permissive use of the area under their newly installed awning, the court concluded that they had no right to continue displaying merchandise in that area. Accordingly, the court entered judgment declaring that defendants have the "right to display merchandise on the boardwalk beneath the existing overhang on the defendants' building, without having to pay rent or other compensation for such usage," but enjoining defendants from displaying any merchandise "and from making any other use of any portion of the boardwalk area to the south of the existing overhang on the southerly side of defendants' leased premises." In addition, the court awarded plaintiffs $5,000 as total compensation for defendants' unauthorized use of the area beyond the overhang to their building during the 1994, 1995 and 1996 seasons. Finally, the

court dismissed the count of plaintiffs' complaint which sought a declaration that defendants had forfeited their leasehold interest. The court subsequently entered an order denying plaintiffs' motion for a new trial and/or reconsideration.

Plaintiffs appeal from the judgment and the order denying their motion for a new trial and/or reconsideration. We conclude that the trial court erred in ruling that defendants have a right to display merchandise outside their leased premises without plaintiffs' consent and in refusing to grant an injunction prohibiting that use. We also conclude that the court awarded plaintiffs inadequate damages for the unauthorized use of the boardwalk area during the 1994, 1995 and 1996 seasons. Accordingly, we reverse in some respects and modify in other respects the parts of the judgment dealing with those claims. We affirm the part of the judgment denying plaintiffs' demand for a declaration that defendants' leasehold interest has been forfeited.

I

It is undisputed that plaintiffs own the entire area of the boardwalk underneath the overhang to defendants' building and that the lease does not expressly grant defendants any interest in that area. To the contrary, the lease provides that "[the lessee] shall neither encumber or obstruct the sidewalk and front of, or any entrance to, the building on the leased premises," and that "[a]ll sidewalks, walkways and entrances in or around the demised premises shall be kept 'as is' with no further construction or encumbrances thereon." Nevertheless, because plaintiffs permitted defendants to display merchandise in certain areas underneath the overhang from 1977 or 1978 to 1993, the trial court concluded that plaintiffs had "waived" their right to prevent defendants from continuing this activity, thereby in effect holding that defendants had acquired a perpetual easement for the display of merchandise over this part of plaintiffs' property.

An easement is a "nonpossessory incorporeal interest in another's possessory estate in land, entitling the holder of the

easement to make some use of the other's property." *Leach v. Anderl,* 218 *N.J.Super.* 18, 24, 526 *A.*2d 1096 (App.Div.1987). An easement may be created by an express conveyance, by implication or by prescription. *Ibid.* Because plaintiffs clearly did not convey any express easement to defendants, we only need to consider the law relating to easements by implication and by prescription.

An implied easement by necessity arises by operation of law where "an owner of land conveys to another an inner portion thereof, which is entirely surrounded by lands owned by the conveyor...." *Leach v. Anderl, supra,* 218 *N.J.Super.* at 25, 526 *A.*2d 1096 (quoting 3 Powell, *Real Property* § 410 at 34–62 to 34–63 (1985 & Supp.1987)).[2] Such an easement "is predicated upon the strong public policy that no land may be made inaccessible and useless." *Ibid.* (quoting *Old Falls, Inc. v. Johnson,* 88 *N.J.Super.* 441, 451, 212 *A.*2d 674 (App.Div.1965)). Although defendants unquestionably have an implied easement by necessity to walk upon plaintiffs' boardwalk in order to provide themselves, their employees and customers with access to their premises, this easement does not include the use of the boardwalk for the display of merchandise. Defendants did not show that the display of merchandise upon the boardwalk is an indispensable prerequisite to the use of their property, and the trial court made no such finding. Therefore, even if an implied easement by necessity could be established on the basis of that kind of evidence, defendants failed to make such a showing.

To establish an easement by prescription, a claimant must show a use which is adverse or hostile, exclusive, continuous,

---

[2] The other types of easement by implication, called an "implied grant" and an "implied reservation," arise from a conveyance of land which is subject to a quasi-easement based on the original owner's use of one part of the land for the benefit of another part, and are clearly not applicable under the facts of this case. *See Pochinski Realty Assocs. v. Puzio,* 251 *N.J.Super.* 388, 392–93, 598 *A.*2d 523 (App.Div.1991); *see generally, Restatement (Third) of Property: Servitudes* §§ 2.11 to 2.14 (Tentative Draft No. 1, 1989).

uninterrupted, visible and notorious for a period of twenty years. *Baker v. Normanoch Ass'n,* 25 *N.J.* 407, 419, 136 *A.2d* 645 (1957). Because defendants' use of plaintiffs' boardwalk, which began in 1977 or 1978, was challenged by legal action in 1995, the statutory period of twenty years of adverse use was not met. More importantly, both Applegate and Brown agreed that defendants' use of the boardwalk was conducted with Brown's permission until 1994, and when a use of property is permissive, by definition it is not adverse. *See Kruvant v. 12–22 Woodland Ave. Corp.,* 138 *N.J.Super.* 1, 18–19, 350 *A.2d* 102 (Law Div.1975), *aff'd o.b.* 150 *N.J.Super.* 503, 376 *A.2d* 188 (App.Div.1977); *Hazek v. Greene,* 51 *N.J.Super.* 545, 144 *A.2d* 199 (App.Div.), *certif. denied,* 28 *N.J.* 58, 145 *A.2d* 167 (1958).

Defendants' permissive use of plaintiffs' property resulted in a revocable license rather than an easement. "A parol consent to enter upon land amounts only to a license." *Eileen T. Quigley, Inc. v. Miller Family Farms, Inc.,* 266 *N.J.Super.* 283, 295, 629 *A.2d* 110 (App.Div.1993). "A license is simply a personal privilege to use the land of another in some specific way or for some particular purpose or act." *Township of Sandyston v. Angerman,* 134 *N.J.Super.* 448, 451, 341 *A.2d* 682 (App.Div.1975). Plaintiffs gave defendants consent to use the part of the boardwalk under the overhang to their building for the display of merchandise. Because defendants provided no consideration for this consent and did not expend any significant amount of money or worsen their position in any other way in reliance upon their belief that they had a right to continue this use, they only had a revocable license to display their merchandise under the overhang. *See River Dev. Corp. v. Liberty Corp.,* 51 *N.J.Super.* 447, 473, 144 *A.2d* 180 (App.Div.1958), *aff'd* 29 *N.J.* 239, 148 *A.2d* 721 (1959); *Restatement (Third) of Property: Servitudes* § 4.1, comment f (Tentative Draft No. 4, 1994); 4 Powell, *Real Property* § 34.26 at 34–315 to 34–318 (1997).

Although the trial court did not find that defendants had established an easement, it nevertheless concluded that plaintiffs

had "waived" their right to prevent defendants' use of the board-walk for display of merchandise by permitting this use to continue over a period of sixteen or seventeen years. However, the establishment of an interest in land is governed by the previously discussed principles of real property law rather than any amorphous concept of waiver. In any event, there is no factual foundation for a finding that plaintiffs relinquished their right to prevent defendants from using the area of the boardwalk underneath the overhang for the display of merchandise. The record only shows that plaintiffs granted defendants and certain other lessees permission to display merchandise or make other use of some areas of the boardwalk.[3] There is no evidence plaintiffs ever indicated this permission was permanent and could not be revoked. Permission to make a transitory use of property is the hallmark of a revocable license. *See Thiokol Chem. Corp. v. Morris County Bd. of Taxation,* 41 *N.J.* 405, 417, 197 *A.*2d 176 (1964). Such permission does not constitute a permanent waiver of the property owner's right to prevent others from using his property. Therefore, the trial court erred in granting defendants what amounts to a perpetual easement for the display of merchandise on the boardwalk area underneath the overhang to their building.

## II

We turn next to the trial court's award of only $5,000 in damages for defendants' unauthorized use of the boardwalk area over the three year period from 1994 to 1996. Initially, we note that because the trial court concluded that defendants were entitled to display their merchandise in the area underneath the overhang, the damage award apparently was based solely on defendants' unauthorized use of the area underneath their newly

---

[3] The record also indicates that plaintiffs refused to allow many lessees to make such uses of the boardwalk area. In fact, plaintiffs brought two prior lawsuits to enjoin lessees under ninety-nine year leases from obstructing the boardwalk.

installed awning. Consequently, we ordinarily would remand the case for a redetermination of damages in light of our conclusion that defendants' display of merchandise on the entire boardwalk area, including the portion under the overhang, was unauthorized. However, because the trial record clearly indicates that the fair value of this use of the boardwalk is at least $5,000 per year and plaintiffs have limited their damages claim to this amount, we conclude that the interest of justice would be served by our finally deciding the issue. *See R.* 2:10–5.

Although an award of damages is left to the sound discretion of the trier of fact, the exercise of that discretion must be supported by the evidence. *Endress v. Brookdale Community College,* 144 *N.J.Super.* 109, 142, 364 *A.*2d 1080 (App.Div.1976). "[W]here a person uses the land of another to carry on profit-making activities, without permission, the landowner should be able to recover a reasonable rent." *Kruvant v. 12–22 Woodland Ave. Corp., supra,* 138 *N.J.Super.* at 25, 350 *A.*2d 102; *see also N.J.S.A.* 2A:42–13.

Plaintiff Brown, who had nearly twenty years of experience renting space on the boardwalk, testified that the fair rental value of the disputed boardwalk area was $25,000 to $30,000 per year. On the other hand, Applegate testified that the area would have little value to anyone except him and that the fair rental value was only $500 to $1,000 per year. However, Applegate also indicated that the real estate taxes on the area were around $500 and that he had agreed in informal discussions with Brown to pay him $5,000 per year to use this area for the display of his merchandise. Although Applegate subsequently refused to sign a licensing agreement under which he would pay plaintiffs this amount, he never indicated that $5,000 was unreasonable. Moreover, Applegate admittedly knew that Brown expected to be paid an additional $5,000 each year if defendants continued to display their merchandise on the boardwalk outside the leased premises. Under these circumstances, we see no basis in the record for awarding plaintiffs less than the $5,000 per year which they seek

for the unauthorized use of their property. We also see no basis for withholding the award of such damages for the unauthorized use of the property in 1996. Accordingly, we modify the judgment to award plaintiffs $15,000 in damages.

## III

Finally, we consider plaintiffs' argument that the trial court erred in refusing to declare a forfeiture of defendants' leasehold interest. Plaintiffs' argument is based on a paragraph of the lease which states:

> If the [lessee] defaults in any of its obligations hereunder and such default is not cured after thirty (30) days notice from the [lessor], it shall be lawful for [the lessor] to enter into and upon such premises and hold the same and this Lease shall thereupon and from thence forth be wholly to an end, and the estate hereby granted shall cease and determine.

Plaintiffs argue that this forfeiture provision was triggered because defendants wilfully continued to use the boardwalk for the display of their merchandise despite receiving repeated notices from plaintiffs they did not have permission to use this area and that such use constituted a violation of the provision of the lease prohibiting the lessee from "encumber[ing]" or "obstruct[ing]" the boardwalk.

"[L]anguage which may defeat an estate must be strictly construed and always against rather than in favor of a forfeiture." *Johnson v. City of Hackensack,* 200 *N.J.Super.* 185, 190, 491 *A.2d* 14 (App.Div.1985). Thus, if there is an ambiguity in a forfeiture clause, it should be construed to avoid a forfeiture.

The structure of defendants' lease raises some doubt whether the forfeiture clause applies to defendants' use of the boardwalk for the display of merchandise. The lease provides in pertinent part:

> The party of the second part [Applegate and Dagostino] shall comply with all municipal and state regulations, orders and requirements and permit no unlawful use of the premises.
>
> The party of the second part agrees during the term of this Indenture to pay all taxes on land and buildings. Taxes on the land shall be apportioned by the party of the first part [Mandia and Brown] on the entire tract and the proportional share

due the party of the second part shall be assessed by the party of the first part and paid by the party of the second part. All utility charges and any other taxes and charges on the leased premises shall be borne by and paid for by the party of the second part.

The party of the second part shall insure and keep insured said leased premises against fire—with windstorm and extended coverage—to insurable value.

If the party of the second part defaults in any of its obligations hereunder and such default is not cured after thirty (30) days notice from the party of the first part, it shall be lawful for said party of the first part, their successors or assigns, to enter into and upon such premises and hold the same and this Lease shall thereupon and from thence forth be wholly to an end, and the estate hereby granted shall cease and determine.

In order to further enhance and promote the general recreational area which includes these demised premises, the party of the second part agrees

a. The party of the second part shall neither encumber or obstruct the sidewalk and front of, or any entrance to, the building on the leased premises. All sidewalks, walkways and entrances in or around the demised premises shall be kept "as is" with no further construction or encumbrances thereon. Except that second party may expand or extend the existing improvement in a westerly direction to a point where said improvement will aline [sic] with the westerly line of existing improvement to the north.

. . . .

c. The party of the second part further agrees to cooperate with the party of the first part and other amusement and store owners in the general vicinity in an advertising program and security program, including the party of the second part's proportionate share and expense thereof (not to exceed $200.00) in promotion and protecting the general recreation area for the benefit of all owners and lessees.

The fact that the forfeiture clause is triggered by the lessee's default "in any of its obligations hereunder" could be interpreted to allow a forfeiture for any breach of the lease. However, the fact that this clause appears in the middle of the lease, immediately following the recitation of the lessee's most essential obligations, rather than at the end, could support the conclusion that a forfeiture can be declared only for a breach of one of the lease obligations set forth prior to the forfeiture clause. This conclusion draws additional support from the fact that the duties to comply with state regulations, pay taxes, and purchase insurance set forth prior to the forfeiture clause are affirmatively stated in terms of "the party of the second part *shall*," whereas the language subsequent to the forfeiture clause starts out with much softer, conditional language: "In order to further enhance ... the general

recreational area ... the party of the second part *agrees ....*" In addition, the obligations imposed in the paragraphs preceding the forfeiture clause are of much more consequence than the promises imposed by the subsequent paragraphs. For example, it is difficult to believe that a court would invoke a forfeiture if defendants failed to "cooperate" with a $200 advertising campaign.

In any event, even if the forfeiture clause could be construed to apply to the wilful maintenance of an obstruction on the boardwalk, we are satisfied that it was not triggered by defendants' display of merchandise during the 1994, 1995 and 1996 summer seasons because, when viewed in light of the prior business and personal relationship between the parties, defendants' compliance with their other obligations, and the good faith dispute between the parties as to their rights and obligations under the lease, that activity only constituted a minor breach of defendants' lease obligations. *Cf. Johnson v. City of Hackensack, supra,* 200 *N.J.Super.* at 190, 491 *A.*2d 14 ("Where a forfeiture results from the failure to use property for the purpose specified in the deed, a minor deviation from that use will not effect the forfeiture as long as the specified use is substantially carried out"); *see also* 49 *Am.Jur.2d Landlord and Tenant* § 339 (1995) ("[A] lessee who has breached a covenant of the lease providing for its termination because of such breach may, under some circumstances, avoid the forfeiture of the lease through intervention of equity, where it clearly appears necessary to prevent an unduly oppressive result, or to prevent an unconscionable advantage to the lessor or an unconscionable disadvantage to the lessee.").

Accordingly, paragraph one of the judgment is modified to enjoin defendants from placing any merchandise, clothing, tables, or similar articles upon or in any other way obstructing any of the boardwalk area outside of their premises; paragraph two is modified to award plaintiffs $15,000 in damages for the unauthorized use of the area described in paragraph one during the 1994–

96 seasons; paragraph three is affirmed; and paragraph four is reversed.