776 A.2d 926 (2001)
342 N.J. Super. 439
In the Matter of the Application of BELL ATLANTIC-NEW JERSEY, INC. for Approval of an Extension of its Plan for an Alternative Form of Regulation.
In the Matter of the Filing of Bell Atlantic-New Jersey, Inc. for the Reclassification of Existing Rate Regulated Services-Directory Assistance Services as Competitive Services.
Superior Court of New Jersey, Appellate Division.
Submitted October 24, 2000.
Decided July 13, 2001.
*927 Blossom A. Peretz, Ratepayer Advocate, for appellant Division of the Ratepayer Advocate in both appeals (Ms. Peretz, of counsel; Carl Wolf Billek, Assistant Deputy Ratepayer Advocate, and Heikki Leesment, Deputy Ratepayer Advocate, on the brief in A-6018-98; Ms. Leesment and Lawanda R. Gilbert, Assistant Deputy Ratepayer Advocate, on the brief in No. A-1059-99).
*928 Gary A. Greene, Basking Ridge, for cross-appellant AT & T Communications of New Jersey, Inc. in No. A-6018-98.
John J. Farmer, Jr., Attorney General, for respondent Board of Public Utilities in both appeals (Andrea M. Silkowitz, Assistant Attorney General, of counsel; Eugene P. Provost, Deputy Attorney General, on the respective briefs).
Wilentz, Goldman & Spitzer, Woodbridge and Barry S. Abrams, Newark, for respondent Bell Atlantic New Jersey, Inc. in both appeals (Anne S. Babineau and Hesser G. McBride, Jr., of counsel and, with Daniel A. Hagan, on the brief in A-6018-98 and, with Matthew M. Weissman, Woodbridge, on the brief in No. A-1059-99).
Before Judges KESTIN, CIANCIA and ALLEY.
The opinion of the court was delivered by KESTIN, J.A.D.
These appeals both involve the administration of the Telecommunications Act of 1992(Act), N.J.S.A. 48:2-21.16 to 21.21, by the Board of Public Utilities (Board), and implicate similar issues. We have considered them together and now consolidate them for the purposes of rendering an opinion.
A-1059-99
A provision of the Act authorizes the Board "to determine, after notice and hearing, whether a telecommunications service is a competitive service." N.J.S.A. 48:2-21.19b. See generally In re Application of New Jersey Bell Tel. Co. (now Bell Atl.-N.J., Inc.) for Approval of its Plan for an Alternative Form of Regulation, 291 N.J.Super. 77, 676 A.2d 1133 (App.Div. 1996). In A 1059-99, the Board approved a petition filed by Bell Atlantic New Jersey, Inc. (BA-NJ), for the reclassification of its Directory Assistance Services (DAS) from rate regulated to competitive services.
The Division of the Ratepayer Advocate (Advocate) contends that the Board should have conducted a plenary hearing prior to acting on BA-NJ's petition. In a related vein, the Advocate argues (1) that the Board's approval violated BA-NJ's original alternative regulation plan, resulting in an improper degradation of services for residential customers, and (2) that the Board made its decision without proper fact finding.
We do not consider additional issues the Advocate raises for the first time in its reply brief, including those addressing asserted failures by the Board to promulgate regulations for reviewing a reclassification petition and to "provide proper notice ... as to how it would decide the case." It is improper to introduce new issues in a reply brief. State v. Smith, 55 N.J. 476, 488, 262 A.2d 868, cert. denied, 400 U.S. 949, 91 S.Ct. 232, 27 L.Ed.2d 256 (1970); Selective Ins. Co. of Am. v. Hojnoski, 317 N.J.Super. 331, 335, 722 A.2d 118 (App.Div.1998); Interchange State Bank v. Veglia, 286 N.J.Super. 164, 188, 668 A.2d 465 (App.Div.1995), certif. denied, 144 N.J. 377, 676 A.2d 1092 (1996). See also R. 2:6-5; Warren Twp. v. Suffness, 225 N.J.Super. 399, 412, 542 A.2d 931 (App. Div.), certif. denied, 113 N.J. 640, 552 A.2d 166 (1988). In the context presented, the issues raised do not warrant departure from customary principles of appellate practice. See, e.g., Coastal Group v. Planned Real Estate Dev. Section, 267 N.J.Super. 49, 56, 630 A.2d 814 (App.Div. 1993) (addressing the issue of a state agency's authority to order rescission, even though improperly raised for the first time in a reply brief, because we considered it *929 to be a matter of public importance); Hojnoski, supra, 317 N.J.Super. at 335, 722 A.2d 118 (addressing an apparent conflict between a statute and a regulation even though the issue was raised for the first time in an appellate reply brief).
In partial response to the Advocate's argument, advanced in respect of the Act for the first time in this appeal, that a plenary hearing was required before the determination contemplated in N.J.S.A. 48:2-21.19b could be made, the Board argues that, in the past, it has reclassified existing rate-regulated services as competitive services without trial-type hearings when, after notice and an opportunity to be heard, it had determined there were no material facts in dispute. Recitation of those reclassifications accomplished without evidentiary hearings, but rather after notice to the public and a comment period much as in rule promulgations, see N.J.S.A. 52:14B-4, seems intended to suggest the Advocate knew the Board might conduct its reclassification determination of BA-NJ's DAS without formal evidentiary hearings.
The Board's argument misses an essential point. The governing statute unambiguously requires a hearing before the determination can rightfully be made. It is not a requirement that can be ignored. Yet, the question remains what the nature of that hearing must be.
The term "hearing" does not have a fixed meaning in the field of administrative law; it varies with the types of issues considered. Compare, e.g., N.J.S.A. 52:14B-4, -8, -9 and -10. Thus, when a statute requires a hearing, the question is not whether a hearing should be held, but rather what type of proceeding is appropriate to the nature of the case. See generally, Henry J. Friendly, "Some Kind of Hearing", 123 U. Pa. L.Rev. 1267 (1975).
Administrative agencies function in several realms simultaneously. Two of these involve matters calling for determinations based on adjudicative fact, on the one hand, and legislative fact, on the other. In Cunningham v. Department of Civil Serv., 69 N.J. 13, 350 A.2d 58 (1975), the Supreme Court succinctly described the distinction between the two concepts:
Adjudicative facts are facts about the parties and their activities, businesses, and properties, usually answering the questions of who did what, where, when, how, why, with what motive or intent; adjudicative facts are roughly the kind of facts that go to a jury in a jury case. Legislative facts do not usually concern the immediate parties but are general facts which help the tribunal decide questions of law, policy and discretion.
[Id. at 22, 350 A.2d 58 (quoting Kenneth Culp Davis, The Requirement of a Trial Type Hearing, 70 Harv. L.Rev. 193, 199 (1956)).]
It is entirely too facile to suggest, however, that just because a determination involves legislative fact an evidentiary hearing of any kind is excluded as an appropriate and fair requirement of the procedure designed to lead to that determination. Concomitantly, but only beside the point in this matter, the fact that a proceeding involves adjudicative fact does not mandate a particular type of evidentiary proceeding, either. See Friendly, supra.
What is required in each instance, as a hearing appropriate to the nature of the case, is a proceeding that promotes fundamental fairness and fosters the integrity of governmental processes. The idea embodies concepts which go beyond whether a contested case hearing under the Administrative Procedure Act (APA) is required and focuses on how governmental functions can best be discharged to engender *930 confidence that the processes used are suitable to the end to be achieved.
In High Horizons Dev. Co. v. Department of Transp., 120 N.J. 40, 575 A.2d 1360 (1990), the Supreme Court noted that, where there is no specific statutory or rule requirement that a hearing be held, see id. at 42, 575 A.2d 1360, the need for a trial-type hearing tends to be influenced by whether the agency is acting in a quasi-judicial or quasi-legislative capacity. Id. at 50, 575 A.2d 1360. If the agency is exercising its administrative expertise to make a policy determination not involving the adjudication of disputed facts, a trial-type hearing is ordinarily not required. Id. at 51, 575 A.2d 1360. Manifestly, however, if the question turns on a factual-type determination, including expert opinion submitted for the agency's evaluation and reliance, an interested party with the requisite standing must be able, in some effective way, to contest the bases offered. Therefore, if the issues require the agency to consider material facts and to apply the law and the agency's understanding of public policy to the facts found, a hearing suitable to a discharge of those functions is necessary. Id. at 50, 575 A.2d 1360 (citing Cunningham, supra, 69 N.J. at 21, 350 A.2d 58); see Bally Mfg. Corp. v. New Jersey Casino Control Comm'n, 85 N.J. 325, 334, 426 A.2d 1000 ("Only where the proposed administrative action is based on disputed adjudicative facts is an evidentiary hearing mandated."), appeal dismissed, 454 U.S. 804, 102 S.Ct. 77, 70 L.Ed.2d 74 (1981).
It will be seen at once that these guidelines do not provide an unerring solution to the question of when a hearing is required ... or what type of hearing is required.

* * * *
If, as [Kenneth Culp] Davis [author of Administrative Law Treatise (2d ed.1979)] says, "a trial is a process for taking evidence subject to cross-examination," and the only evidence bearing on [the issue] consists of ... various diagrams and plans ..., the question is: "What does one cross-examine?" * * * If the [agency] is exercising "policy or discretion" ... a clear requirement for a trial-type hearing is not present. On the other hand, if the question turns on expert opinion relied on by the agency, one must be able in some way to contest the bases of the opinion.
[High Horizons, supra, 120 N.J. at 50-51, 575 A.2d 1360 (quoting Davis, supra, § 12.1 at 406).]
It is clear, therefore, from the underlying rationales employed in the cases and other authorities which have addressed the question, that the precise characteristics of a required hearing are dictated not so much by the type of exercise in which the agency is engaged, but more so by the nature of the questions presented.
We are mindful of the inherent limitations of High Horizons. The Court there, in the absence of a statutory requirement for a hearing, was expressly searching for a benchmark to aid in determining whether a hearing was nevertheless required and, if so, what type of hearing would satisfy the needs of the particular case. The Court concluded, "[i]n sum, it is the presence of disputed adjudicative facts, not the vital interests at stake, that requires the protection of formal trial procedure." Id. at 53, 575 A.2d 1360.
Here, we need not determine whether a hearing is required. The Legislature has expressly provided for one. The only question before us is what the nature of that hearing ought to be. To resolve that issue, the questions before the Board in this matter must be viewed in their full context and understood discretely.
*931 The issues before us stem from the Board's determination, in 1993, to approve a plan for an alternative form of regulation proposed by New Jersey Bell Telephone Company, which became BA-NJ. The Board found that the proposed plan, as it had been modified, met all of the criteria established by the Act.
The Division of Rate Counsel, now the Advocate, and various others appealed from the Board's decision. In re Application of N.J. Bell Tel. Co. (now Bell Atl.-N.J., Inc.) for Approval of its Plan for an Alternative Form of Regulation, 291 N.J.Super. 77, 676 A.2d 1133 (App.Div. 1996). The appellants essentially questioned the adequacy and permissibility under the prevailing law of the modified plan as approved by the Board. Id. at 84, 676 A.2d 1133. There was no dispute "as to the elements of the approved plan as outlined in the Board's decision and orders." Ibid.
We affirmed the Board's actions, stating:
Our review of the extensive record in the light of the arguments advanced by the parties discloses that the Board's action approving, in modified form, the plan proposed by petitioner was a proper exercise of the regulatory discretion committed to the Board's authority in the Act and other enabling legislation. We discern the Board's action to have been a fair implementation of the new regulatory regime embodied in the Act. The Board, in its decision, addressed each of the approval criteria recited in N.J.S.A. 48:2-21.18a, and concluded, with ample basis in the evidence, that all had been satisfied.
[Id. at 88, 676 A.2d 1133.]
We noted that none of the parties had showed that they had been "deprive[d] ... of a fair opportunity to address factual showings and opinions that c[a]me to inform the ultimate decision made." Id. at 93, 676 A.2d 1133.
BA-NJ's alternative regulation plan, as modified and approved by the Board, froze tariffed rates for rate regulated services through December 31, 1995, except for increases due to exogenous events or revenue-neutral rate restructures. Beginning on January 1, 1996, the plan permitted, in certain circumstances, specifically expressed increases for rate regulated services. The plan also allowed BA-NJ to petition the Board for the reclassification of "an existing rate regulated service as competitive," so long as BA-NJ supported "its petition with affidavits or other proofs evidencing the competitive nature of the service as required by the Act[,]" and "follow[ed] the safeguard and notice provisions set forth in Section III" of the plan. The "Consumer and Competitive Safeguards" in Section III, commonly referred to as the imputation and unbundling requirements, applied to all BA-NJ competitive services as well as to those services BA-NJ would seek to reclassify as competitive. The provisions ensured that BA-NJ's ratepayers would not bear any of the costs of the competitive services and that BA-NJ's competitors would have access to BA-NJ's network services on the same terms and conditions as BA-NJ.[*]
In December 1997, BA-NJ filed this petition with the Board, seeking approval for the reclassification of its DAS from rate regulated to competitive services. BA-NJ's DAS included four specific services: (1) local Directory Assistance, which provided customers with assistance in determining telephone numbers; (2)
*932 Connect ReQuest, which provided customers of local Directory Assistance with the opportunity to have their requested numbers automatically dialed for an additional charge; (3) Call 54, which provided customers with name and address information for BA-NJ published telephone numbers; and (4) List Service, which provided customers with telephone numbers in written form.
Attached to its petition, BA-NJ submitted the affidavit of Vincent J. Woodbury, BA-NJ's Director of Regulatory and Business Planning Operator Services. Woodbury first noted that the following competitors offered directory assistance services in New Jersey: (1) interexchange carriers; (2) alternate directory assistance providers; (3) wireless service providers; (4) and competitive local exchange providers. He then detailed like or substitute services for DAS available to BA-NJ's customers, including: (1) the customer's annual BA-NJ telephone directory; (2) the directories available for purchase from BA-NJ for other areas of the State; (3) the directories available at the public libraries; (4) the directory services provided through internet service providers; and (5) the directories available on CD ROM format. Finally, Woodbury explained the ease of entry into the directory assistance market and stated that BA-NJ offered its directory listings to third parties who accessed BA-NJ's directory-listing database substitute.
In January 1998, AT & T Communications of New Jersey, Inc. (AT & T) filed an answer to the petition and further requested the proprietary cost allocation data that BA-NJ had filed. AT & T requested the Board not to declare BA-NJ's DAS competitive, because BA-NJ had not demonstrated that its services complied with the "Consumer and Competitive Safeguards" in the plan and in the Act. In the alternative, AT & T requested that the Board delay action on BA-NJ's application until such time as the Board, among other things, allowed all interested parties to receive copies of BA-NJ's proprietary cost data and to analyze and comment upon that material.
BA-NJ responded that it would provide AT & T and other interested parties with copies of its proprietary DAS cost allocation data. It further declared, among other things, that BA-NJ's DAS did not incorporate any non-competitive components and met the requirements specified in the Act and in the plan. BA-NJ supplied the requested information to AT & T and to the Advocate.
In August 1998, the Board advised the Advocate that it was concluding its review of BA-NJ's petition, inviting the Advocate to submit its position to the Board.
In September 1998, the Advocate submitted comments to the Board. The Advocate stated that BA-NJ had not provided sufficient evidence upon which the Board could issue a decision on the petition, and that the Board should delay action on the petition until all interested parties had an opportunity to comment upon BA-NJ's cost data. The Advocate further recommended that the Board consider classification of DAS in full evidentiary hearings, and that the Board consider BA-NJ's DAS-reclassification petition in connection with BA-NJ's alternative-regulation-plan hearings to be held in 1999.
BA-NJ responded to the Advocate's comments by sending the requested data. BA-NJ also declared that: (1) its verified petition was supported by an affidavit and met the requirements for reclassification; (2) the statutory requirements did not compel the Board to conduct a hearing with "`live' testimony"; and (3) notice of BA-NJ's petition had already been sent to interested parties. Finally, BA-NJ stated that inclusion of its DAS-reclassification *933 petition with its future alternative-regulation-plan petition would complicate the Board's review of each item.
In a letter to the Board dated August 1999, the Advocate argued that a hearing was required by N.J.S.A. 48:2-21.19b before the Board could reclassify BA-NJ's DAS. The Advocate stated that a "mere exchange of correspondence" did not satisfy the hearing requirement in that statute, and that the record here was not an adequate basis upon which the Board could make factual findings regarding the statutory reclassification requirements. The Advocate also stated that BA-NJ had provided no information about the degree to which other services could effectively substitute for the DAS BA-NJ already had in place, and contended that the removal of free DAS from residential local exchange services would "materially reduce" the value received by consumers. Finally, the Advocate renewed its request that the Board defer its consideration of this matter until it had evaluated BA-NJ's alternative-regulation-plan petition.
BA-NJ responded to the Advocate's comments by asserting that the statute did not compel the Board to conduct a trial-type hearing, and that the Board could use discretion in selecting the type of proceeding "so long as the selection is responsive to the purpose and function of the agency." BA-NJ further contended that the Board could consider its petition based on the documents submitted, since no party proffered evidence to contradict that petition. BA-NJ also argued that evidentiary hearings were not required because the Board would be considering legislative facts and not adjudicative facts; that is, questions relating to the likelihood of market entry and the existence of substitute services did not present "`jury-type' questions" where the credibility and veracity of witnesses were at issue. Finally, BA-NJ asserted that the Board should not delay this matter as the Advocate and AT & T had had more than nineteen months to review and comment on the petition and supporting materials.
At its public agenda meeting on August 31, 1999, the Board considered the submissions of the parties and the position of its staff. During the meeting, the Board's staff stated: (1) that only three states offered more free directory assistance calls than New Jersey, and (2) that even if the Board required the reduction of free calls from six to four, the number of free residential directory assistance calls in New Jersey would be greater than in forty other states, and that about 78% of residential customers who made four or fewer calls would not be impacted at all. The Board then approved the reclassification of BA-NJ's DAS to competitive services, memorializing its decision in an order dated September 14, 1999.
In its order, the Board initially noted that BA-NJ had given newspaper notice to the public and had mailed notice to the Advocate and others. With regard to the statutory requirement for a hearing in N.J.S.A. 48:2-21.19b, the Board stated that "the statute does not require an evidentiary hearing when the facts at issue are in the nature of legislative facts." The Board declared that its task was to apply the statutory facts already in evidence relating to "the ease of market entry, [the] presence of other competitors, and the availability of like or substitute services." The Board explained that its function involved only the exercise of its own discretion. The Board stated:
Moreover, although the Advocate may disagree with BA-NJ's analysis regarding the application of the statutory standards, an analysis which BA-NJ would have the Board adopt, and may disagree with the conclusions which we herein *934 reach, the Advocate does not contradict the evidence of market entry, presence of competitors or availability of substitute services which is in the record. In this situation, an evidentiary hearing is not required by the Act.
The Board further noted that precedent existed to forego a public hearing when no party objected to the service offering. It cited three previous reclassification cases in which the Advocate had failed to assert that the Act required an evidentiary hearing prior to the approval of reclassifications. Consequently, the Board concluded that, because BA-NJ had fully addressed all the issues raised by AT & T and the Advocate and had provided all requested information, no adjudicatory facts remained at issue and a hearing was not required. Then, noting the lengthy opportunity for comment, the Board rejected the Advocate's request to delay the matter further by deferring it into the proceeding to review BA-NJ's plan filing.
The Board determined that BA-NJ's DAS met the required statutory standards in N.J.S.A. 48:2-21.19b and should be reclassified as competitive services. It found that there was sufficient ease of market entry to declare BA-NJ's DAS competitive, because "the `facilities' necessary for DAS market entry"-dialing method, database access, and a workforce-were universally available and not limited to established competitors. The Board cited to the existence of a number of smaller and start-up competitors already providing DAS-like functions and to a number of competitive alternatives. It also noted that it had previously directed BA-NJ to make access to its directory assistance database universally available to competitors.
The Board found additionally that the record contained sufficient evidence of the existence of other competitors for directory assistance services to declare BA-NJ's DAS competitive. The Board noted that an assortment of DAS provided by several competitors were "readily available throughout New Jersey[,]" including interexchange carriers, alternative directory assistance providers, and wireless service providers. The Board stated:
IXC competitive offerings now include such services as AT & T's "1-800-CALL ATT" and "00" INFO and MCI WorldCom's "XX-XX-XXXX." These directory assistance services, which provide both local and national directory listing information, are available to AT & T's and MCI/WorldCom's calling card and intra and interLATA toll customers, as well as casual dialers. These services also offer customers the option of having their requested telephone numbers connected. Alternative directory assistance providers, such as INFONXX, also compete with BA-NJ to provide directory assistance to large business customers. Wireless service providers also compete with BA-NJ's DAS by offering directory assistance services to their own customers. These wireless service providers (e.g., Bell Atlantic Mobile, AT & T Wireless, Sprint, Omnipoint, etc.) do not route their directory assistance calls to BA-NJ. Instead, they route the calls to their own DAS or alternative directory assistance providers, such as INFONXX and Metro One. Wireless providers' directory assistance services include local and national listings nationwide and automatic call completion, and may offer to customers Yellow Page search and other specialized services.
The Board found further that there was sufficient evidence in the record of the existence of like or substitute services to declare BA-NJ's DAS competitive. The Board explained that "like or substitute directory assistance services are readily available to the residential and business *935 customers in BA-NJ's service territory, the relevant geographic area." These services were provided by
IXCs, wireless service providers, telephone directories provided by BA-NJ and others (e.g., Yellow Book tm), on-line Internet directory services (e.g., America On-Line ("AOL"), CompuServe and WebTV), and CD-ROM telephone books (e.g., MetroMail, American Business Information, and Pro-CD, Inc.).
Finally, the Board determined that BA-NJ had demonstrated that its DAS did not incorporate any non-competitive service components, since BA-NJ had provided data to its competitors for a fee and since competitors were currently creating alternative database products. Thus, the Board announced in sum, it was satisfied that BA-NJ had satisfied the Act's competitive safeguards.
Notwithstanding that determination, the Board also believed that a "transition period" was appropriate with regard to residential directory assistance services. During that period, BA-NJ (1) would not increase the $.20 residential local directory assistance call rate per chargeable call until the expiration of the current plan, including the one-year extension of the current plan, (2) would reduce the monthly residential free call allowance per line from six to four local directory assistance calls per month; (3) would continue the monthly residential allowance of four free calls along with the $.20 rate per chargeable call until December 31, 2000; (4) would include in its bills an insert advising that the residential monthly free directory assistance call allowance had been reduced from six to four per line; and (5) would continue to provide the exemption from imposition of directory assistance charges for physically or visually disabled persons.
"[A]fter a thorough review of the entire record[,]" the Board found "that the proposed tariff revisions are reasonable, in the public interest and in accordance with law." It thus approved, with the conditions outlined above, the reclassification of BA-NJ's DAS from rate regulated services to competitive services.
In the context of the Board's responsibility to determine whether BA-NJ's proposal to reclassify DAS met a realistic standard of competitiveness, see N.J.S.A. 48:2-21.16b(1) ("In a competitive marketplace, traditional utility regulation is not necessary to protect the public interest[.]"), the Advocate and others opposing the proposal were entitled to appropriate opportunity to test the factual premises of the proposal and the proofs offered in support thereof. This must be the least meaning of the hearing requirement of N.J.S.A. 48:2-21.19b.
Further, a point of inquiry necessarily bearing upon the public interest relates to the assurances provided in the alternative regulation plan previously approved by the Board that BA-NJ's ratepayers would not bear any of the cost of ostensibly competitive services. Another was the question of whether the removal of free DAS from residential local exchange services would materially reduce the value customers received. Those opposing the proposal were entitled to an effective opportunity to test the proposal against these norms.
Others, beside the Advocate, also had an interest in a proceeding which realistically satisfied the statutory hearing requirement. Some of the showings they were entitled to test existed in the context of the assurances in the basic, previously approved plan that BA-NJ's competitors would have access to BA-NJ's network services on the same terms and conditions as BA-NJ itself. In addition to receiving BA-NJ's proprietary cost data and offering affirmative showings in response *936 thereto, those parties were entitled to appropriate opportunity for addressing the sufficiency and accuracy of the data.
At the very least, in general, the parties opposing the proposal were entitled, through cross-examination or some effective substitute, to an opportunity to test the accuracy and sufficiency of the facts and opinions offered through the Woodbury affidavit and the Board's staff, as well as the factual assertions embodied in BA-NJ's cost data. Moreover, they were entitled to an effective opportunity to offer countervailing showings in some form. Even if the Board was entirely accurate in depicting the Advocate as not contradicting BA-NJ's "evidence of market entry, presence of competitors or availability of substitute services which is in the record[,]" there were significant premises of the proposal which the Advocate and others did contest or, at least, questioned.
Given the idea that an administrative hearing must be appropriate as measured by the issues to be determined, it is not wise, or even possible, to itemize the particular characteristics of any generalized statutory hearing requirement, such as the one at issue here. It suffices to say that N.J.S.A. 48:2-21.19b creates a requirement that may not be ignored or seen to invite avoidance rationales.
We conclude that the procedures in this matter did not satisfy the statutory requirement for a hearing in that they failed to afford objecting parties an adequate opportunity at least to test the accuracy and sufficiency of all the material showings in support of the proposal if not also to make affirmative showings challenging the premises of the proposal in some better form than that which was actually permitted. The matter must therefore be remanded for reconsideration. With due regard for the Board's authority and its commitment to discharging its statutory role in a manner consonant with legislative intent, we leave to the Board, on remand, subject to law and judicial review, the task of crafting a suitable process appropriate to the nature of the matter before it.
We have not been informed that any stay of the Board's September 14, 1999 order was effected. If, after reconsideration, the Board reaches a materially different result regarding BA-NJ's proposal to reclassify its DAS than was previously reached, it shall also fashion an appropriate order remedying, as necessary, the impact of the approval in the interim.

A-6018-98
In A-6018-98T2, the Advocate and AT & T appeal from the Board's order extending BA-NJ's alternative regulation plan for one year, until December 31, 2000. The primary issues raised on this appeal, as well, bear upon the notice and hearing requirements of the Act. The basic contention is that the extension was ordered without an appropriate hearing as required by N.J.S.A. 48:2-21.18a.
By the time the appeal was perfected and submitted for our review, the one-year extension period had almost come to an end. It has now expired, rendering this appeal moot. The general concepts we have discussed in relation to the companion appeal regarding the need for a hearing appropriate to the nature of the case are equally applicable in this matter, however.
In A-1059-99T3, we reverse and remand for reconsideration in a proceeding satisfying the requirements we have articulated. A 6018-98T2 is dismissed as moot.
NOTES
[*] On May 24, 1999, the Board granted BA-NJ's request to extend the plan for an additional year. That Board order is the subject of the companion appeal, A-6018-98.