864 A.2d 1191 (2005)
374 N.J. Super. 448
RANDOLPH TOWN CENTER, L.P., Plaintiff-Appellant,
v.
COUNTY OF MORRIS, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued November 17, 2004.
Decided February 1, 2005.
*1192 Lawrence S. Berger, Morristown, argued the cause for appellant (Berger & Bornstein, attorneys; Ruth M. Meyer, on the brief).
William F. Johnson, Jr., Riverdale, argued the cause for respondent (Ronald Kevitz, Morris County Counsel, Michael E. Hubner, Special Morris County Counsel, attorneys; Mr. Johnson, Jr. and Robert Shayka, Jr. on the brief).
Before Judges WEFING, PAYNE and C.S. FISHER.
The opinion of the court was delivered by
PAYNE, J.A.D.
Plaintiff Randolph Town Center, a real estate development company, appeals from a judgment against it, based on the jury's determination that defendant County of Morris had established a prescriptive easement to drain water through a culvert under the Sussex Turnpike onto property, owned by Randolph, that Randolph sought to develop as a shopping center, creating wetlands that made commercial development difficult or impossible.
At trial, which commenced on June 30, 2003 and concluded on July 9, 2003, the *1193 court without objection charged that the period required to establish a prescriptive easement was twenty years. After the trial had concluded and this appeal had been perfected, on August 9, 2004, Randolph's counsel moved for leave to amend the issues on appeal to assert the argument that an incorrect prescriptive period had been utilized, noting that in a decision rendered two years before the trial, the Supreme Court had established the correct period to be thirty or sixty years, depending on the state of development of the property. See J & M Land Co. v. First Union Nat. Bank, 166 N.J. 493, 766 A.2d 1110 (2001). We granted Randolph's unopposed motion, but denied its additional motion for summary disposition and remand. The County has not otherwise sought to respond in writing to Randolph's substantive arguments on this newly raised issue.
In addition to the issue of the proper period for prescription, in its initial brief, Randolph charged error in (1) the court's order barring evidence of a 1983 written easement; (2) the court's denial of Randolph's motion for a directed verdict barring the County's defense of prescriptive easement; and (3) the court's refusal to permit the jury to consider its claim of inverse condemnation once a prescriptive easement had been found to exist.[1] We reverse and remand for a new trial.

I.
In J & M Land, supra, the Supreme Court undertook to analyze and harmonize various existing statutes governing possessory rights to property in the context of a claim by J & M of adverse possession of marshland upon which two billboards had been erected, for which J & M had collected rents since 1956. Following an extensive review of historical precedents and a critical analysis of relevant New Jersey statutes and cases construing them, the Court determined that New Jersey's laws contained separate provisions establishing a twenty-year statute of limitations applicable to actions for ejectment, N.J.S.A. 2A:14-6 and -7, and establishing either a thirty- or sixty-year period for perfection of claims to adverse possession, N.J.S.A. 2A:14-30 and -31. Id., 166 N.J. at 516-20, 766 A.2d 1110. However, the Court found the ejectment statutes and their limitations periods, set forth at N.J.S.A. 2A:14-6 and -7, had been superseded by the provisions of N.J.S.A. 2A:35-1, which authorized actions for possession of property but contained no specified time in which proceedings must be instituted. Id. at 520-21, 766 A.2d 1110. Thus, a right of action against an unlawful possessor was maintained throughout the period required to obtain adverse possession.
The Court additionally found that the marshland upon which the billboards at issue had been erected constituted an "uncultivated tract" to which the 60-year period set forth in N.J.S.A. 2A:14-30 applied, rather than the 30-year period applicable to all land "excepting woodlands or uncultivated tracts." Id. at 518-19, 766 A.2d 1110. The Court then noted that, because J & M's adverse possession for thirty-nine years had been interrupted at more than twenty years but less than sixty *1194 years, J & M had sought to argue that it had obtained possessory rights by prescriptive easement, and thus it was not bound by the time periods of N.J.S.A. 2A:14-30, which addressed adverse possession only. Id. at 519, 766 A.2d 1110. However, the Court rejected the argument, concurring in our determination that J & M's use of the land was possessory in nature, and not merely an easement permitting a limited use and enjoyment of the land that was not a normal incident of a possessory land interest. Ibid. (citing J & M Land Co. v. First Union Bank, 326 N.J.Super. 591, 598, 742 A.2d 583 (App.Div.1999)).
In our decision in J & M, we had not sought to dispositively determine the period required to establish a prescriptive easement. However, in a footnote, we had observed:
The prevailing rule, as expressed in comment a to section 460 of the Restatement of Property (1944) is that "[t]he `period of prescriptions' is fixed, in the absence of specific statutory provision, by analogy to the period derived from the local statutes of limitations for the acquisition of title to land by adverse possession," which in this case would be the sixty-year limitations period for "uncultivated tracts" provided by N.J.S.A. 2A:14-30.
[J & M, supra, 326 N.J.Super. at 598 n. 1, 742 A.2d 583.]
Significantly, the Supreme Court quoted that footnote in its opinion. J & M, supra, 166 N.J. at 519, 766 A.2d 1110.
The Court's reference to the provision of the Restatement that we have just set forth and its seeming acceptance of it constituted dictum, since the Court found as well that a prescriptive easement did not exist in the circumstances presented. However, we have been offered nothing to suggest error in that statement of law. Our research discloses that, nationwide, the principle remains currently accepted. See, Restatement (Third) of Property: Servitudes § 2.17 cmt. k[2] (2000). Moreover, we find that the use of the thirty- and sixty-year periods set forth in N.J.S.A. 2A:14-30 is reasonable, given the close association between concepts underlying the establishment of title by adverse possession and the establishment of a servitude by prescription. See id. cmt. a. See also Patton v. No. Jersey Dist. Water Supply Comm'n, 93 N.J. 180, 186, 459 A.2d 1177 (1983) ("[T]o acquire title by adverse possession, the possession must be actual and exclusive, adverse, visible or notorious, and continued and uninterrupted."); Baker v. Normanoch Ass'n, Inc., 25 N.J. 407, 419, 136 A.2d 645 (1957) ("The nature of the user necessary for the creation of an easement by prescription is the same as that for the acquisition of title by adverse possession, i.e., it must be adverse or hostile, exclusive,[3] continuous, uninterrupted, visible and notorious...."); Mandia v. Applegate, 310 N.J.Super. 435, 443-44, 708 A.2d 1211 (App.Div.1998) (same). As a final matter, prior decisions have adopted the same period for perfection of title by adverse possession and for creation of a servitude by prescription. See, e.g., Baker, supra, 25 N.J. at 419, 136 A.2d 645; Mandia, supra, 310 N.J.Super. at 444, 708 A.2d *1195 1211. Both cases cited the twenty-year period to obtain title by adverse possession that J & M has repudiated. However, what is significant for the present purposes is that the courts established identical time periods for the two types of possessory actions. We have found nothing to suggest that differences in the property interests acquired by adverse possession and prescription mandate differences in the period required for the ripening of those interests. As a consequence, we find the thirty- and sixty-year periods that are applicable in the context of adverse possession also to be applicable here.
We understand from the record that the property at issue is neither "woodlands or uncultivated," but instead contains the remnants of buildings and other improvements. We thus assume without deciding that a thirty-period prescriptive period is applicable in this case. Our review of the record satisfies us that neither the passage of that period nor its interruption was established at trial as a matter of law. As a consequence, we remand the matter for retrial.

II.
Randolph argues additionally that the court erred in excluding evidence of a 1983 written drainage easement agreement between the County and the Estates of Hyman and Pearl Adler for "a permanent and perpetual Right-of-Way and easement for storm and surface water drainage and for the purposes hereinafter specified, over, under, across and upon" a parcel denominated Block 121, Lot 3 from its frontage on the Sussex Turnpike to its opposite border adjoining Block 121, Lot 35, and for a right of entry to install and maintain a storm drain pipe thereon. Randolph claims that: "Since the County obtained permission as early as 1983, to drain the storm water across Randolph's property, its use as of 1983 was no longer adverse." Randolph argues additionally that, as of 1983, the County "no longer had the requisite intent to establish an adverse use of Randolph's property and any running of the [prescriptive] period terminated."
The court declined to admit the evidence, finding that it would confuse the jury, since the easement was never utilized and no evidence existed as to the circumstances surrounding its creation or its apparent abandonment. On the basis of the existing record, we cannot make a determination as to whether the court's order was erroneous or not. Indeed, we are uncertain whether the subject easement commenced at the culvert giving rise to the present litigation or at another, and whether the easement pertained to the same property. However, we do not foreclose to Randolph the right, upon a suitable proffer as to the import and relevance of the easement and any evidence explaining it, to again seek its admission into evidence at the retrial of the matter. We do not regard the fact that the statute of limitations has run with respect to any claim for breach of the easement agreement to preclude the introduction of this evidence for a different purpose, so long as the jury is instructed as to the reason for which the evidence is being introduced.

III.
We reject Randolph's argument that the court erred in not granting a directed verdict at the close of the County's case barring the defense of the creation of a prescriptive easement because the County failed to offer any evidence on which a *1196 reasonable jury could conclude that the elements of hostility and open and notorious use were demonstrated.
Our review of the record under the standards established by Dolson v. Anastasia, 55 N.J. 2, 5, 258 A.2d 706 (1969) reveals sufficient evidence to support a jury's determination that the County's use of the property now owned by Randolph was open and notorious. There was evidence presented that the culvert constructed by the County under the Sussex Turnpike was visible, as was the periodic outflow of storm water from that culvert onto the subject land and the increasingly large wetland established as the result of that outflow. The requirements of visible, open and notorious use by a prescriptive user of property are meant to
give the owner of the servient estate ample opportunity to protect against the establishment of prescriptive rights. To satisfy this requirement, the adverse use must be made in such a way that a reasonably diligent owner would learn of its existence, nature, and extent. "Open" generally means that the use is not made in secret or stealthily. It may also mean that it is visible or apparent. "Notorious" generally means that the use is actually known to the owner, or is widely known in the neighborhood.... An openly visible and apparent use satisfies the requirement even if the neighbors have no actual knowledge of it.
[Restatement (Third), supra, § 2.17 cmt. h.]
Under these standards, we find that the proofs at trial sufficed to demonstrate a use that was sufficiently open and notorious that an ordinarily prudent person would have been put on notice that someone was asserting a claim adverse to Randolph's or its predecessors' possession. Patton, supra, 93 N.J. at 186-87, 459 A.2d 1177.
Hostility, in this context, has been defined to mean "a user under a claim of right, pursued with an intent to claim as against the true owner in such circumstances of notoriety that the owner will be aware of the fact and thus alerted to resist the acquisition of the right by the claimant before the period of adverse possession has elapsed." A.J. and J.O. Pilar, Inc. v. Lister Corp., 22 N.J. 75, 81, 123 A.2d 536 (1956) (quoting Predham v. Holfester, 32 N.J.Super. 419, 423-24, 108 A.2d 458 (App.Div.1954)). We find a jury issue to have been raised as to whether this element was demonstrated, as well. It appears that the County constructed a culvert under the Sussex Turnpike for the purpose of draining accumulated water from one side of the Turnpike to the other. It is clear that a drainage discharge onto the property now owned by Randolph took place on a periodic basis when weather conditions warranted. Although some evidence at trial suggested that the County somehow regarded this use as permissive, the evidence was not strong, and was equally susceptible to the inference that the County intended to use the property adversely for the County's drainage purposes and, by its use, placed the owners of that property on notice of the County's intent. We also find grounds to permit the inference that the discharge existing today was not a recent phenomenon, but had persisted throughout the life of the culvert, nothing in the record having demonstrated a change in condition such that the inference could be deemed untenable. We thus find no merit in Randolph's argument that its motion for a directed verdict was improperly denied.

IV.
As a final matter, Randolph argues that its action for inverse condemnation should not have been dismissed simply because the jury found that a prescriptive easement had been created. We reject that argument as well, finding that a right *1197 to compensation ceases once the possessory right has been established. As stated in the Restatement (Third), supra,
Prescription doctrine rewards the long-time user of property and penalizes the property owner who sleeps on his or her rights. In its positive aspect, the rationale for prescription is that it rewards the person who has made productive use of the land, it fulfills expectations fostered by long use, and it conforms titles to actual use of the property. The doctrine protects the expectations of purchasers and creditors who act on the basis of the apparent ownerships suggested by the actual uses of the land.
In its negative aspect, prescription is supported by the rationale that underlies statutes of limitation....
Prescription operates in two distinct factual situations.... In the most common situation, the prescriptive use is made without the consent of the servient owner and the successful claimant acquires a servitude without paying for it.
[Id. § 2.17 cmt. c.]
See also Restatement of Property § 465 (1944) ("Adverse use for the prescriptive period results in an immunity on the part of the user from liability for his acts of use during the prescriptive period") and cmt. a (noting that causes of action that may have arisen prior to the creation of the prescriptive right are barred by the establishment of that right); Nagel v. Emmons Cty. No. Dakota Water Resource Dist., 474 N.W.2d 46 (N.D.1991) (denying injunctive relief and damages on this basis to a landowner incurring damages as the result of long-term flooding caused by a change in the drainage pattern resulting from the county's road construction); Hoffman v. United Iron & Metal Co., Inc., 108 Md.App. 117, 671 A.2d 55 (1996) (precluding nuisance and other claims of landowners against a factory owner if prescriptive period had passed).
Reversed and remanded for a new trial.
NOTES
[1] We do not consider the issue first raised by Randolph in its reply brief: namely, that a governmental entity cannot acquire a prescriptive easement, other than to note that with virtually no exception, the extensive case law addressing the issue fails to support Randolph's position. See A.M. Vann, Annotation Acquisition of Title to Land by Adverse Possession by State or Other Governmental Unit or Agency, 18 A.L.R.3d 678 (1968). See also In re Bell Atlantic-New Jersey, Inc., 342 N.J.Super. 439, 442-43, 776 A.2d 926 (App.Div.2001) (declining to address issue first raised in reply brief as of insufficient public importance to warrant deviation from customary principles of appellate practice).
[2] The comment states that "courts base the prescriptive period on the time provided by the statute of limitations for bringing an action to recover possession of land, which also determines the period required for adverse possession." As we have demonstrated, New Jersey has effectively repealed its ejectment statutes, together with their statutes of limitations, substituting instead N.J.S.A. 2A:35-1, which affirms the right to bring a possessory action but does not limit the period in which it is to be brought. By default, therefore, the thirty- and sixty-year time periods of N.J.S.A. 2A:14-30 are applicable, if the Restatement's summary of the law is accepted.
[3] The requirement of exclusivity means only that the user have acted independently of the rights claimed by others, such as the general public. The use of this requirement has been determined confusing and redundant. See Restatement, supra, § 2.17 cmt. g.